Argued 27 June, decided 17 July, rehearing denied 28 August, 1905.

## AUSPLUND *v.* ÆTNA INDEMNITY CO.

81 Pac. 577, 82 Pac. 12.

INDEMNITY CONTRACT — RECITALS AND CONDITIONS.

1. The liability under an indemnity bond is not limited to the recitals, where by appropriate reference the contract is incorporated into the bond — the contract being then the measure of the liability.

For instance: An indemnity undertaking reciting that the principal has entered into a written agreement bearing a certain date, "in substance practically as follows" — followed by a general statement of the terms of the contract, and conditioned for the faithful compliance by the principal "with all the terms, covenants, and conditions of said contract," incorporates the principal's contract into the undertaking, and renders the indemnitor liable for a breach of a provision of the contract not specially recited in such general statement, the entire contract being by reference a part of the undertaking.

PLEADING — WAIVER OF OBJECTION OF LIMITATION.

2. Under B. & C. Comp. § 68, permitting as ground of demurrer that the action was not commenced within the time limited by the Code, an objection that the complaint shows on its face that the action was not commenced within the time specified must be taken by demurrer, or it will be deemed waived; but whether this applies to the limitation imposed by special contracts is not decided.

PLEADING — ANTICIPATING DEFENSE — INSUFFICIENCY OF ANSWER SETTING UP SPECIAL LIMITATION.

3. Where a complaint shows facts sufficient to excuse plaintiff's delay in not instituting the action within the time limited in the contract sued on, which are denied, a separate answer alleging that the action was not commenced within the time so limited is demurrable, as not containing new matter constituting a defense, under B. & C. Comp. § 78. The issue is made by the allegation and denial, so the allegation in the separate answer is no defense.

PRINCIPAL AND SURETY — EFFECT OF ASSUMING CONTRACT BY SURETY.

4. Where a surety, either corporate or individual, in pursuance of the terms of the undertaking, assumes the performance of the principal's contract, such surety is subrogated to the rights of the principal in such contract, and becomes subject to his liabilities.

APPEAL — PRESUMPTION IN ABSENCE OF TESTIMONY.

5. Where the bill of exceptions does not purport to contain all the testimony given at the trial, and the court does not certify that all such testimony is incorporated in the transcript, it will be presumed on appeal that the evidence was sufficient to support the findings.

VALIDITY OF SPECIAL CONTRACT LIMITATION.

6. The parties to a contract may stipulate that an action for its breach shall be brought within a certain period, and, if the limitation so prescribed is reasonable, it will be upheld.

VALIDITY OF UNREASONABLE CONTRACT LIMITATIONS.

7. A building contract bound the contractor to pay for all labor and materials promptly, so that no liens should be filed against the property on account thereof. An indemnity undertaking authorized the surety to assume the contract and complete the same in case the contractor should fail to comply with the terms thereof, and further provided that any suit brought thereon should be instituted within six months after a breach of the contract. The indemnitor assumed the

performance of the contract, and accepted payments thereon from the owner, but failed to pay for material used in the construction of the building. Liens were consequently filed against the property the amount of which could not be determined until they were foreclosed, which could not be done with reasonable promptness until more than six months after the breach. *Held,* that the limitation period of six months was, under the. circumstances, unreasonable and inoperative.

Waiver of Contract Limitation by Guarantor.

8. An indemnitor on a building contract which assumed the performance of its principal's contract, and received from the owner the money due thereon, and failed to comply with the terms of its undertaking thereby waived a stipulation in such undertaking limiting to six months after breach the time within which an action might be brought on the contract.

Appeal — Evidence — Bill of Exceptions.

9. A bill of exceptions does not negative the fact that defendant may have introduced testimony on which the findings for plaintiff are based, where, after a recital that the foregoing was all the testimony offered by plaintiff, and thereupon defendant moved for an order of nonsuit, which was denied, it recites that "at the close of the case, no more testimony having been introduced on behalf of plaintiff," defendant moved for findings and judgment in its favor, which was denied.

From Multnomah : Arthur L. Frazer, Judge.

Statement by Mr. Justice Moore.

This action was instituted August 28, 1903, by Octavia Ausplund against J. W. Higgins and the Ætna Indemnity Co. to recover damages for the breach of an agreement. The complaint states, in effect, that the defendant, the Ætna Indemnity Co., is a corporation engaged· in this State in the indemnity business ; that the defendant, Higgins, on June 21, 1902, entered into a written contract with plaintiff, whereby he stipulated to erect for her on or before November 1 of that year a dwelling house, and to secure the performance of the terms of such agreement the defendants duly executed to her an undertaking, of which the following is a copy :

"The Ætna Indemnity Company,
Hartford, Conn.

Know all Men by these presents, that we, J. W. Higgins, of Portland, Or., as principal, and The Ætna Indemnity Company, a corporation created and existing under the laws of the State of Connecticut, and whose principal office is located in Hartford, Conn., as surety, are held and firmly

bound unto Octavia Ausplund, of Portland, Or., in the full and just sum of twenty-three hundred and forty-six dollars, good and lawful money of the United States of America, to the payment of which sum, well and truly to be made, the said principal binds himself, his heirs, executors, and administrators, and the said surety binds itself, its successors and assigns, jointly and severally, firmly by these presents.    Signed, sealed, and dated this 26th day of June, A. D. 1902.

Whereas, the said principal has entered into a certain written agreement with Octavia Ausplund, bearing date of June 21, 1902, being in substance practically as follows : To faithfully erect and finish for and in consideration of the sum of twenty-three hundred and forty-six ($2,346.00) dollars a two-story and basement frame residence, situate on the west half of lots 3 and 4, block 289, in Hawthorne Park, in the City of Portland, Or., conformable to the drawings and specifications made by the owner; said work to be completed on or before the 1st day of November, 1902.

Now, Therefore, the condition of the foregoing obligation is such that if the said principal shall well, truly and faithfully comply with all the terms, covenants and conditions of said contract on his part to be kept and performed according to its tenor, then this obligation shall be void ; otherwise to remain in full force and effect.

This bond is issued subject to the following provisions :

Provided, that the said surety shall be notified in writing of any act on the part of the said principal, his agents or employees, which may involve a loss for which the said surety is responsible hereunder, immediately after the occurrence of such act shall have come to the knowledge of the fully authorized representative or representatives of Octavia Ausplund, who shall have the supervision of the completion of said contract, and a registered letter mailed to the office of Clemens & O'Bryan, managers of the Ætna Indemnity Company, at Portland, Or., shall be deemed sufficient notice within the meaning of this bond.

Provided, that if the said principal shall fail to comply with all the terms of said contract to such an extent that same shall be forfeited, then said surety shall have the right and privilege to assume said contract and to sublet

or complete the same, whichever said surety may elect to do, provided it is done in accordance with said contract.

Provided Further, that in the event of any breach of the conditions of this bond, said surety shall be subrogated to all the rights and properties of said principal arising out of said contract, and all payments deferred, and any and all moneys at that time due said principal under and by virtue of said contract shall be credited upon any claim the said Octavia Ausplund° may make upon said surety because of said breach.

And Provided Further, that any suits at law or proceedings in equity brought against this bond to recover any claim thereunder must be instituted within six months after the first breach of said contract.

And Provided Further, that the said surety shall not be liable for a greater sum than twenty-three hundred and forty-six ($2,346.00) dollars because of or on account of this bond.

And Provided Lastly, that the assured or superintendent of the work must give to said surety due notice before the last payment under the contract herein referred to is made to the principal; otherwise, this obligation shall be void as to any liability of the surety hereunder.

In Witness Whereof, the said principal has hereunto set his hand and seal, and the said surety has caused these presents to be signed and executed by its attorney in fact at Portland, Or., the day and year first written above."

It is then alleged that Higgins commenced the erection of the building, but failed to pay for the materials used in the construction thereof when the several claims therefor matured, and about October 20, 1902, plaintiff notified the indemnity company of his neglect in this respect, whereupon the company informed her that it would assume Higgins' contract, and requested her to make to it all payments of money due or accruing to him under the agreement; that in pursuance of such demand plaintiff thereafter made all payments of money due Higgins under the contract to the corporation, which assumed full con-

trol of the building and completed it; that the contract entered into with Higgins provided that the last payment due him thereunder was to be made when the house was completed and the possession thereof delivered to plaintiff free of liens; that after the indemnity company assumed such control and received the money due under the contract it permitted certain liens for materials furnished to be used in the erection of the house to be filed in the office of the County Clerk of Multnomah County, setting out a list thereof, and stating the several sums demanded by the respective lien claimants. It is also alleged that suits were duly instituted to foreclose such liens, and before the day for answering the several complaints therein had expired plaintiff notified the indemnity company of the pendency of such suits, and requested it to settle or defend the same; that such proceedings were had in the several suits that on April 19, 1903, decrees were rendered therein for the sums demanded by each lien claimant; that in pursuance of such decrees plaintiff's real property was offered for sale, to prevent which she, on May 19, 1903, was compelled to pay $624.50, the sum due, no part of which has ever been repaid to her; and "that plaintiff had no means of ascertaining what claims for material furnished and used in the erection of said residence defendants had failed to pay until she was served with the summons in said suit, and thereafter the attorneys' fees and costs to which said lienors became entitled could only be determined by the decrees in said foreclosure suit."

The defendant, the Ætna Indemnity Co., alone answering, denied the material allegations of the complaint, and for a further defense averred that the undertaking in question was executed without consideration. For a second defense it is alleged that such undertaking provided that suits at law to recover any sum due under the bond should be commenced within six months after the first

breach of the contract in question; that under such agreement Higgins was to complete plaintiff's building on or before November 1, 1902; that he failed to comply therewith, whereupon a breach occurred on that day; and that this action was not commenced until after the expiration of more than six months from November 1, 1902. As a third defense, it is averred that the undertaking, setting out the preamble and condition clauses, describes the only contract to which the indemnity company ever became a party; that Higgins constructed plaintiff's house in every particular as specified, except that it was not completed on the day prescribed; and that plaintiff does not claim any damage on account of such delay. For a fourth defense it is alleged that the indemnity company never at any time purchased or ordered any material for or used any thereof in the construction of plaintiff's house. And as a fifth defense it is stated that this action was not commenced until after the expiration of more than six months after each of such liens was filed.

A demurrer to the several separate defenses, on the ground that neither of them stated facts sufficient to constitute a defense having been sustained, a trial was had without a jury, the court making findings of fact in accordance with the allegations of the complaint; and, a judgment having been given thereon for the sum demanded, the Ætna Indemnity Co. appeals. AFFIRMED.

For appellant there was a brief over the name of *Platt & Platt*, with an oral argument by *Mr. Harrison Gray Platt*.

For respondent there was a brief over the names of *Whitney Lyon Boise, Waldemar Seton,* and *John T. McKee*, with an oral argument by *Mr. Boise* and *Mr. McKee*.

MR. JUSTICE MOORE delivered the opinion of the court.

1. The contract entered into between Higgins and the plaintiff is not specifically set out in, or expressly made a

part of, the undertaking, and because of such omission it is argued by appellant's counsel that the only part of the agreement the performance of which was guaranteed by the indemnity company is indicated in the bond, to wit, that Higgins would construct for plaintiff a frame residence conformable to the drawings and specifications thereof, and that he fully complied with this stipulation ; that the parties to the undertaking plainly omitted therefrom the clause in Higgins' contract to the effect that he would, at his own expense, furnish all material used in, and supply all labor employed on, plaintiff's building, and promptly pay therefor, so that when the house was finished no liens on account of such labor or material could be filed against the property ; and that as the bond in question did not undertake to indemnify plaintiff against any liability she might incur in consequence of the filing of liens against her real property, or guaranty the performance of any of the conditions of Higgins' contract, except such as were incorporated in the undertaking, the court erred in admitting such agreement in evidence.

A text-writer, in discussing the liability incurred under an indemnity undertaking, says : "If the main contract is broader in its scope than the limits fixed in the bond, a reference to the contract will only incorporate so much of the same as is within the limits of the terms of the bond": Stearns, Law of Suretyship, § 143. This author further says : "In general, the liability upon a bond is limited to its recitals. The obligations cannot be enlarged or restricted by parol. The surety is entitled not only to the protection of the ordinary rules of evidence relating to written instruments, but to the additional protection of the statute of frauds, whereby no action can be maintained upon a promise to pay the debt of another unless the promise is in writing.  *  *  Where the principal and the obligee enter into an agreement, and a bond is given to secure its

performance, and the bond recites some of the obligations of the main contract, but not all, the liability under the bond will be limited to the recitals, where the contract is not incorporated into the bond by reference": Stearns, Law of Suretyship, § 146.

In the case at bar it will be remembered that the preamble to the undertaking states when the contract between the plaintiff and Higgins was consummated, describes with particularity the real property upon which the frame residence was to be constructed, and specifies when the building was to have been completed. The stipulation in the bond in regard to the uncertain future event is as follows: "Now, therefore, the consideration of the foregoing obligation is such that if the said principal shall well, truly and faithfully comply with all the terms, covenants and conditions of said contract on his part to be kept and performed according to its tenor, then this obligation to be void.; otherwise to remain in full force and effect." If the words "substance practically" had been omitted from the preamble, the liability of the indemnity company for a breach of the undertaking might probably have been limited to the contract purporting to have been set out therein; but, having made use of these words, the phrase "said contract" in the conditional clause undoubtedly refers to the entire agreement entered into between Higgins and the plaintiff, and not to the import thereof, as stated in the preamble clause. In *Oberbeck* v. *Mayer*, 59 Mo. App. 289, it is intimated that a contract, the performance of which was guaranteed by an undertaking, might be identified by the date specified in the bond, or by annexing thereto the agreement. In the case at bar the date of the contract and the description of its subject-matter, as specified in the undertaking, are, in our opinion, sufficient to identify the agreement; and reference in the bond, qual-

47 OR.——2

ified as it is by the use of the words "substance practically," is adequate to incorporate the contract into the undertaking, thereby rendering the indemnity company liable for a breach of any of the terms of the agreement. No error was committed in admitting the contract in evidence, the important clause of which is as follows: "The contractor shall pay for all labor and materials promptly, so that when the contract is finished no liens may be filed against the property on account thereof."

2. It is maintained by appellant's counsel that the special period of limitation as to the time within which a suit should have been instituted against the indemnity company, as provided in the undertaking, had expired when this action was commenced, and hence an error was committed in sustaining a demurrer to the answer. It is argued by plaintiff's counsel, however, that an inspection of the complaint discloses that the alleged period of special limitation designated in the undertaking had expired when this action was begun, and that, as no demurrer to the complaint was interposed on that ground, the error complained of was waived. One of the grounds of demurrer that may be interposed to a complaint is as follows: "That the action was not commenced within the time limited by this Code": B. & C. Comp. § 68. The rule is settled in this State that where it appears on the face of a complaint that the action was not commenced within the time limited by the Code the objection must be taken by demurrer, and, if not so taken, the exception on that ground is waived: *Spaur* v. *McBee*, 19 Or. 76 (23 Pac. 818); *Davis* v. *Davis*, 20 Or. 78 (25 Pac. 140); *Hawkins* v. *Donnerberg*, 40 Or. 97 (66 Pac. 691, 908). It is possible, however, that the method of challenging the sufficiency of a complaint by a demurrer is restricted by statute to the several periods of limitation regulated by the Code, and does not apply to a special limitation agreed upon by the

parties, so that the objection that the action was not commenced within six months from the first breach should have been taken, as it was, by answer, and not by demurrer.

3. However that may be, it will be remembered that the complaint alleges facts tending to excuse plaintiff's delay in not sooner instituting the action, and, if such averment is sufficient in law for that purpose, no error was committed in sustaining a demurrer to the separate defenses, for the allegation of the complaint is in the nature of a confession and avoidance, admitting that the time specified in the undertaking had run, but averring facts tending to show a waiver of the limitation prescribed. This allegation is to the effect that the Ætna Indemnity Co., in pursuance of plaintiff's notice that Higgins was not promptly paying for all the materials used in her building, "assumed full and complete control over the carrying out of said contract and the completion of said residence," and that plaintiff thereafter made to it the payments becoming due under the contract. These averments were denied in the answer, and on the issue thus framed the court found the facts as alleged in the complaint.

4. Though the contractual relation of a corporate suretyship to indemnify a party against loss occasioned by its principal's breach of an agreement is precisely the same as if the contract had been signed by a private party without compensation, the agreement is nevertheless like an insurance contract, in that it offers remuneration for damages caused by negligence, bad faith, and the breach of an agreement: Stearns, Law of Suretyship, § 250. The principle thus announced would probably allow a corporation organized to furnish indemnity for a consideration to invoke the rule applicable to a private surety, who, for the accommodation of a friend, voluntarily guaranteed the performance of the terms of his agreement. If such

private surety, however, becomes subrogated to the rights
of his principal in the undertaking, to which he is a party,
because of the latter's failure to keep his agreement, he
ought to be subjected to all the liabilities assumed by his
principal, regardless of the original contractual relation.
In other words, a corporation becoming a surety may, like
a private surety, by permitting its principal to make such
default as he pleases, insist upon its strict legal right, and
in an action to enforce its liability legally interpose any
defense that a private surety may invoke under the same
circumstances; but when a surety, either corporate or
individual, in pursuance of the terms of an undertaking,
"assumes" the performance of the principal's contract,
such surety, by being subrogated to the rights of the prin-
cipal thereunder, must necessarily become subject to all
his liabilities.

5. The complaint alleges that after the indemnity com-
pany assumed the performance of the contract the plain-
tiff paid to it the sums of money becoming due to Higgins
under the agreement. One of the terms of such agree-
ment is that Higgins should promptly pay for all material
used in plaintiff's building, so that when it was completed
no liens could be filed against the property. In the lower
court, when plaintiff had introduced her testimony and
rested, appellant's counsel moved for a judgment of non-
suit, which having been denied, and an exception saved,
the court found that the indemnity company "assumed"
Higgins' contract, and it is contended that such finding
is unsupported by the evidence. The bill of exceptions
does not purport to contain all the testimony given at the
trial prior to the interposition of the motion last men-
tioned, and, in the absence of the court's certificate that
all such testimony is incorporated in the transcript, it
will be assumed that the evidence was sufficient to uphold
the findings made.

6. This brings us to a consideration of the question whether or not such findings of fact, based on a material issue, support the judgment rendered, notwithstanding the action was not commenced to recover the damages sustained within the time specified in the undertaking. In *Stout* v. *City Fire Ins. Co.*, 12 Iowa, 371 (79 Am. Dec. 539), an interest in real property, consisting of a mechanic's lien, was insured under a policy which provided that no action could be maintained against the insurer unless it was commenced within twelve months after a loss of such property by fire. The property having been so destroyed, it was held that proof of loss could not be made until the lien was established by a decree of foreclosure, and that the stipulation in the policy prescribing a special limitation was inoperative. In deciding the case, Mr. Justice BALDWIN, speaking for the court, says: "The point once settled that the interest insured was a mechanic's lien, and the conditions of the policy such that the assured or his assignee is required, before the commencement of his suit on the policy, to prove to the company the value of the interest that he may have in the building insured, and if this cannot be done in the ordinary proceedings in courts necessary to be pursued, or if such proof cannot be made in a legitimate way within one year after loss, then this condition requiring suit to be commenced within one year is rendered inoperative by the parties themselves." In *Longhurst* v. *Star Ins. Co.*, 19 Iowa, 365, in a suit on an insurance policy given as indemnity against loss by fire of property subject to a mechanic's lien, it was held to be competent for the parties to provide for a special limitation within which an action on the policy might be maintained after a loss; but such condition would not be enforced when so necessarily inconsistent with the nature of the interest insured as to render a recovery unobtainable by the exercise of due

diligence. "If," says Mr. Justice HARLAN in *Thompson v. Phenix Ins. Co.*, 136 U. S. 287 (10 Sup. Ct. 1019, 34 L. Ed. 408), in referring to the delay in bringing an action on an insurance policy within the time agreed upon by the parties, "the failure of the plaintiff to sue within the time prescribed by the policy, computing the time from the date of the fire, was due to the conduct of the company, it cannot avail itself of the limitation of twelve months." The parties to a contract may stipulate that an action for a breach of an agreement must be brought within a certain period, and, if such limitation is reasonable, it will be upheld: 1 Wood, Lim. (2 ed.) § 42.

7. When plaintiff paid to the indemnity company the money due Higgins under the contract, it was incumbent upon the corporation promptly to pay for the material used in the construction of the building; but, not having done so, liens were filed against plaintiff's property, the just amount of which probably could not have been determined until such liens were foreclosed. Until these decrees were rendered, plaintiff could not ascertain in what sum she had been damaged, and, as these liens were not foreclosed until more than six months after the first breach had occurred in the performance of the terms of the contract, the stipulation in the undertaking prescribing a limitation of six months is unreasonable, and therefore inoperative.

8. So, too, the indemnity company, having received from plaintiff the money due under the contract, but failed promptly to pay for the material used in the construction of the building, and allowed liens to be filed against the property, thereby waived the stipulation in the undertaking limiting the time within which an action should have been brought.

From these considerations it follows that the judgment should be affirmed, and it is so ordered.    AFFIRMED.

ON PETITION FOR REHEARING.

MR. JUSTICE MOORE delivered the opinion of the court.

9. A petition for a rehearing having been filed, defendant's counsel insist that a statement in the opinion announced in this case, that the bill of exceptions did not purport to contain all the testimony given at the trial prior to the interposition of a motion for a judgment of nonsuit, is not borne out by the record. A reëxamination of the transcript shows that the opinion inadvertently refers to the motion for a nonsuit, when it should have specified a motion for findings and a judgment in defendant's favor. The bill of exceptions sets out certain exhibits introduced in evidence by defendant, and then contains the following recital:

"That this was all the testimony offered by the plaintiff to sustain the allegations of her complaint and of the pleadings, and thereupon the Ætna Indemnity Company, acting by its counsel, moved the court for an order of nonsuit as follows [stating the reasons therefor]. The motion for a nonsuit is denied. Defendant allowed an exception.

That at the close of the case, no more testimony having been introduced on behalf of plaintiff, the defendant moved for findings and judgment in favor of defendant the Ætna Indemnity Company as follows [giving the grounds relied upon]. The motion is overruled. Defendant excepts.

The foregoing bill of exceptions is hereby settled and allowed.

Arthur L. Frazer, Judge."

The statement in the bill of exceptions, after the order overruling the motion for a nonsuit, "that at the close of the case, no more testimony having been introduced on behalf of plaintiff," etc., does not negative the fact that the defendant may have introduced testimony upon which the findings are based.

We adhere to the assumption announced in the former opinion, which is corrected only in respect to the particular motion intended, and a rehearing is denied.

AFFIRMED: REHEARING DENIED.