[Civ. No. 1471.  Second Appellate District.—July 29, 1914.]

## T: G. WATTERSON et al., Respondents, v. THE OWENS RIVER CANAL COMPANY (a Corporation), Appellant.

CONSTRUCTION CONTRACT—FAILURE TO RECORD—EFFECT ON LIABILITY OF SURETY OF CONTRACTOR.—The fact that a construction contract is invalid as between the parties because not recorded as required by section 1183 of the Code of Civil Procedure, does not release the surety on the bond of the contractor from liability.

ID.—CHANGE IN CONTRACT—WHETHER DISCHARGES SURETY.—A change made in such contract, without the consent of the surety, releases him; but this rule would not apply to a change effected by corporate officers without authority, nor to a change orally agreed upon but not actually executed.

ID.—ABANDONMENT OF WORK BY CONTRACTOR—COMPLETION OF BUILDING BY SURETY—ESTOPPEL TO OBJECT TO CHANGES.—If the contractor abandons work under such construction contract, and his surety, without objection, completes the contract in accordance with changes therein made and demands and receives payment therefor, the surety cannot successfully maintain that the changes were outside the terms of the written contract, or that they were made without his consent.

ID.—RIGHTS OF SURETY ON COMPLETION OF CONTRACT—COMPENSATION AND LIEN.—In completing the work under the unrecorded contract the surety stands in the place of his principal, the contractor, and hence is not entitled to a lien, under section 1183 of the Code of Civil Procedure, for the value of anything furnished or done, but he is limited in his recovery, as in like circumstances the contractor would be, by the contract price named in the written agreement, after adjustment of all additions and deductions due to changes in the work as it progressed, and also after allowance of the proper credits for payments made by the owner.

ID.—SUBCONTRACTORS—RIGHT TO LIEN WHERE PRINCIPAL CONTRACT NOT RECORDED.—Although the contractor or his surety are not entitled to a lien under such unrecorded contract, subcontractors are entitled to liens for labor performed and materials furnished.

ID.—SURETY—LIABILITY ON ASSUMING PERFORMANCE OF PRINCIPAL'S CONTRACT.—When a surety, in pursuance of the terms of an undertaking, assumes the performance of the principal's contract, he must, by being subrogated to the rights of the principal thereunder, necessarily become subject to all of his liabilities.

APPEAL from a judgment of the Superior Court of Inyo County and from an order refusing a new trial. Wm. D. Dehy, Judge.

The facts are stated in the opinion of the court.

L. C. Hall, Potter & Potter, and Wm. J. Clark, for Appellant.

P. W. Forbes, S. E. Vermilyea, and Ben H. Yandell, for Respondents.

CONREY, P. J.—In the superior court, the action of the plaintiff Watterson and a separate action of the other plaintiffs, against the same defendant, were consolidated. From a judgment in favor of the plaintiff Watterson and in favor of certain other plaintiffs, and from an order denying defendant's motion for a new trial, the defendant appeals.

On December 30, 1908, P. N. Snyder and C. A. Collins entered into a written contract with the Hillside Water Company and the Owens River Canal Company, whereby the contractors agreed to perform the excavation work required by certain specifications, for the purpose of making improvements in a canal belonging to defendant Owens River Canal Company. The contract was dated November 30, 1908, and was delivered on December 30th following. Work was commenced early in December, and the contract was not recorded until February 9, 1909. At the time of the execution of the written contract, the plaintiff T. G. Watterson executed to defendant Owens River Canal Company an undertaking in the penal sum of five thousand dollars, conditioned upon due performance of the contract by the contractors. As Collins does not appear any further in the transactions, we will discuss the case as if Snyder were sole contractor.

The consideration to be paid for this work as stated in the contract was nineteen thousand dollars, installments payable monthly on estimates to be made by the engineer. As the contract was not recorded before commencement of the work, the transaction became subject to the provision of section 1183 of the Code of Civil Procedure, that such contracts "shall be wholly void, and no recovery shall be had thereon by either party thereto; and in such case, the labor done and materials furnished by all persons aforesaid, except the contractor, shall be deemed to have been done and furnished at the personal instance of the owner, and they shall have a lien for the value thereof."

The specifications, which are referred to in the contract and attached thereto, contain the following provisions:

"The work to be done consists of excavating one or both banks of the canal to double its present cross section with a view of doubling the present carrying capacity of the canal.

"The company's engineers will give levels and grade stakes designating the excavations that are to be made, and the contractor is to pay particular attention to these stakes and make the excavation true to the stakes given.

"At the discretion of the engineer in charge the excavations may be made on either the upper or lower bank, or both banks of the canal, as the character of ground and material indicates for the most economical and safest excavation.

"It is also understood and agreed that the said engineer in charge may require changes to be made in the route and line of the canal, particularly where the distance can be shortened, and the engineer in charge may direct such changes; and in settling for the same, allowance shall be made to either party, whether the quantity or quality of the materials removed shall be greater or less or of a different character from the estimates and classifications above referred to and made a part of this contract."

The contractor Snyder took charge of the work and conducted the same personally and by sub-contractors for various sections until February 16, 1909. Disputes arose between him and the engineer, on account of changes in levels as furnished by the engineer, and on account of a change made by directing a certain cut-off which shortened the canal. On January 8th a conference took place between the contractor and the engineer and some officers of the two corporations named in the contract, as to the manner in which the work should be done, and it was understood that Snyder would follow the directions given as to these changes ordered by the engineer. But dissatisfaction continued on both sides, so that Snyder gave up the work on February 16th, and at the same time the plaintiff Watterson took charge of the work in place of Snyder. Watterson continued the work until April 16th, when it was completed.

Watterson claims that the verbal understanding at which the contractor and the said representatives of the owner arrived on January 8th, constituted a change in the contract, such as to relieve Watterson from the obligations of his bond, and that as the contract itself was void, his work from February 16th to April 16th was on an original request of the owner, entitling him to claim his lien under the provisions of section 1183 of the Code of Civil Procedure, quoted above.

The appellant contends that the changes made in the work were only such as were provided for in the specifications; and that the work done by Watterson was done by him by virtue of his relation to the transaction as bondsman, for the contractor, and for the purpose of protecting himself from liability on the bond.

There was no formal contract, either written or unwritten, between plaintiff Watterson and the owner, by virtue of which Watterson undertook to complete the work. Mr. L. C.

Hall was treasurer, and was a director and also attorney for the Owens River Canal Company. Mr. Watterson's testimony is that on February 9th or 10th Mr. Hall complained to him that Mr. Snyder was not complying with the instructions of the engineer and was not doing the work satisfactorily, and that they had lost confidence in him, and asked Watterson to go ahead and finish the work. On February 15th, Watterson told Snyder about this. Snyder said, "All right, go ahead and finish it." Watterson replied, "All right." It was under these circumstances that Watterson took charge of this work and did all that was done by him in completion thereof.

The payments by the defendant amount to sixteen thousand dollars, of which the sum of ten thousand dollars was paid prior to February 16th. All of the payments were delivered to Watterson, who was a creditor of Snyder for supplies furnished, and Watterson's receipts recite that the moneys so received were on account of the Snyder and Collins contract and were to be used for payment of such accounts as would constitute liens against the canal.

The demand of Watterson in this action is for the sum of $20,189.54, and the decree appealed from is in his favor for the sum of $10,285.71, with interest, and in favor of the other plaintiffs for sums which in the aggregate are a little over one thousand dollars.

The findings of the court state that on the sixteenth day of February, 1909, the plaintiff Watterson "at the personal instance and request of said defendant, and by and with the consent and authority of said contractor, P. N. Snyder," took charge of the described work, and completed the same on April 16, 1909.

The court's findings declare that on January 8, 1909, "officers and agents" of the defendant, and P. N. Snyder, "made an oral agreement" whereby the work in question was materially and substantially altered from the manner and conditions specified in the contract of November 30, 1908, and the specifications thereof; that by virtue of said oral agreement the work was made more difficult and expensive than that provided for in said written agreement; that the work performed, from January 8, 1909, until the completion thereof on April 16, 1909, was essentially different from and constituted a material departure from said original terms

and conditions; that plaintiff Watterson was not consulted with reference to said oral agreement and said changes and did not assent at any time to said changes in said work, or to any change or departure from the terms and conditions of the original contract.

Finding IV is as follows: "That on the 16th day of February, 1909, a large portion of the said construction, alteration, enlargement, addition to and repair of said Owens River Canal had been done, performed and made by said P. N. Snyder, one of said contractors, under said contract of November 30th, 1909." There is no finding that shows how much of the changes in the contemplated work was executed by Snyder, and how much by Watterson, but the finding generally is that these changes were involved in the work done from January 9th to April 16th. Watterson at all times had knowledge of the original contract and specifications. He did not, when he took charge of the work, or at any time, make any protest against doing the work as directed, including these changes. He did not inform the defendant that he was taking up this work independently of the contract, or that he was not assuming the work as a bondsman for a contractor unable or unwilling to perform the obligations of his contract.

Although the contract is void under the code provisions to which we have referred, yet the matter of changes in the work is material to the questions before us, because the invalidity of the contract did not destroy the liability of Watterson as surety on the bond. (*Kiessig* v. *Allspaugh*, 91 Cal. 234, [27 Pac. 662]; *Summerton* v. *Hanson*, 117 Cal. 252, [49 Pac. 135].) And if the work provided for by the original contract was changed by the parties thereto without consent of Watterson, he would thereby be released from his liability on the bond. (*Alcatraz Masonic Hall Assoc.* v. *United States Fidelity and Guaranty Co.*, 3 Cal. App. 338, [85 Pac. 156]; *Barrett-Hicks Co.* v. *Glas*, 9 Cal. App. 491, 497, [99 Pac. 856].)

The conclusion of the court below, that the written contract was thus changed by an oral agreement, cannot be sustained. "A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise." (Civ. Code, sec. 1698.) Though it be conceded for the moment, that the changes in the work, which have been

mentioned, were not such changes as the engineer might order as provided in the written contract, the objection remains in force, that there was not any evidence that the "officers and agents," who are found to have made the oral agreement, were authorized by defendant to make for it a new or amended contract. And even if they had been so authorized, the conversation of January 8th would not be effective to create changes in the contract until the proposed changes in the work were actually executed. Until thus executed, and in force as contract changes made without the consent of the surety, they could not be sufficient to release him from liability on his bond.

But it further appears that when the changes in the work were actually made in course of the performance thereof, very large portions of those changes were executed by Watterson himself. This being so, he was necessarily consenting thereto, unless his relations to the transaction, as surety on the bond, had been previously abrogated by reason of the small proportion of changes in the work, which had been executed by Snyder. The evidence all shows, that after Watterson had taken charge of the work, and with full knowledge of the facts as they then were, he continued to receive payments as we have before stated, accepting them as payments on the Snyder and Collins contract, and assuring defendant that the money might safely be paid, as defendant had his bond for completion of the contract. He obtained these payments, not merely as compensation earned by Snyder for work done prior to February 16th, but as payments on the contract generally, and represented that he must have them in order that he, Watterson, might be able to complete the work. In view of these facts it seems clear to us that the plaintiff Watterson cannot successfully maintain that the changes now under consideration were outside the terms of the written contract, or that they were made without his consent.

It is therefore clear also that when Snyder told Watterson to go ahead and finish the work of this contract, and Watterson consented and proceeded in accordance with that request, he was in the situation of a surety on a contractor's bond, who undertakes to finish the contract work for his principal. "When a surety, either corporate or individual, in pursuance of the terms of an undertaking, assumes the performance of

the principal's contract, such surety, by being subrogated to the rights of the principal thereunder, must necessarily become subject to all of his liabilities." (*Ausplund* v. *Aetna Indem. Co.*, 47 Or. 10, [81 Pac. 577]; *Hughes* v. *Gibson*, 15 Colo. App. 318, [62 Pac. 1037].)

Since Watterson in completing the work stood in the place of the contractor, he was not, any more than Snyder could be, a person deemed to be acting "at the personal instance of the owner," as described in the Code of Civil Procedure, section 1183, or entitled to any lien for the value of anything furnished or done by him. His right of recovery, if any, for the value of the labor and materials furnished by him, was merely the right to recover a personal judgment therefor, under like limitations as were binding upon Snyder. As Mr. Watterson succeeded and in that way represented the contractor, it follows that Watterson would be limited in his recovery (as in like circumstances the contractor would have been) by the contract price named in the written contract, after adjustment of all additions and deductions due to changes in the work as it progressed, and also after allowance of the proper credits for payments made by the owner. (*Laidlaw* v. *Marye*, 133 Cal. 170, 176, [65 Pac. 391]; *Condon* v. *Donohue*, 160 Cal. 749, 754, [118 Pac. 113].) In the trial of this action, however, this plaintiff not only attempted to assert a lien, but has obtained a decree affirming his claim without regard to the limitations above noted.

With respect to the cause of action stated in plaintiff's complaint, his right to recover herein, and to enforce the lien claimed by him, depends primarily upon the allegation and finding that on or about the sixteenth day of February, 1909, plaintiff and defendant entered into an agreement, under which plaintiff was to furnish certain labor and materials, for the purposes named. There is no evidence of any such agreement, unless the fact could be derived from the circumstances to which we have referred. As these circumstances do not support the claim as to the alleged contract, the appeals must be sustained as to him.

Concerning the judgment in favor of plaintiffs Charles Powers and Arthur Powers, appellant urges nothing in favor of its appeal, except the bare proposition that there is a material variance between the claim of lien and the evidence as to the person by whom they were employed. A comparison

of the references in appellant's brief, with the record in the transcript, fails to support the claim of appellant as to this matter. The plaintiffs Powers were sub-contractors under the contractor Snyder. Being persons who furnished labor and materials to a so-called contractor whose contract was void as herein shown, these plaintiffs were entitled to their lien for the value of the labor furnished by them.

The judgment and decree in favor of the plaintiff T. G. Watterson, and the order denying defendant's motion for new trial as to plaintiff Watterson, are reversed. The judgment and decree and the motion for new trial, as between the defendant and the plaintiffs Charles Powers and Arthur Powers, are affirmed. The appeals against the decree in favor of the other respondents have been abandoned, and are dismissed.

James, J., concurred.

Shaw, J., concurred in the judgment.

A petition for a rehearing of this cause was denied by the district court of appeal on August 28, 1914, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 26, 1914.