## FEDERAL SURETY CO. v. LALONDE et al.

Circuit Court of Appeals, Ninth Circuit. March 25, 1929.

No. 5618.

Ware & Melrin and Philip F. Sherman, both of Minneapolis, Minn., and O. B. Kotz, of Great Falls, Mont., for appellant.

Hurd, Hall & McCabe, H. C. Hall, and E. J. McCabe, all of Great Falls, Mont., for appellees.

Before RUDKIN and DIETRICH, Circuit Judges, and BEAN, District Judge.

RUDKIN, Circuit Judge. September 21, 1924, Lalonde, Peck & Powers, a copartnership, entered into a contract with the state of Montana, through its highway commission, for the construction of about ten miles of

road; the contractors agreeing to furnish and supply all labor and material. The Federal Surety Company executed a bond to the state for the faithful performance of the contract. On October 27, 1924, the contractors sublet the work to one Windsor; the subcontractor obligating himself to fully perform the contract with the state for 87½ per cent. of the original contract price. The Federal Surety Company also executed a bond to the original contractors on behalf of the subcontractor for the faithful performance of the subcontract. The subcontractor began work on the road under his subcontract soon thereafter, but in the latter part of October, 1925, the work was abandoned. The surety company thereupon completed the contract with the state according to its terms. The present action was brought by the original contractors against the surety company to recover the unpaid balance of the 12½ per cent. of the contract price, reserved by them, the amount of certain liability insurance paid by them for and on account of the subcontractor, and certain advances made by them to the subcontractor, amounting in all to the sum of approximately $9,000. The contractors recovered judgment in accordance with the prayer of their complaint, and the surety company has appealed. While numerous defenses were set up in the answer, the only defense relied on in this court is based on the claim that in the performance of the contract after taking over the work, the appellant paid out and expended more than the amount of the penalty of the bond.

In actions of this kind, where a contract has been abandoned by the contractor, the measure of damages is the reasonable cost of completing the contract according to its terms over and above the contract price; and if the owner has already completed the contract, the measure of damages is the amount necessarily and prudently expended in excess of the contract price. And if we assume that a surety company, upon taking over work after abandonment by a contractor, is discharged from further liability when in the completion of the contract it has expended an amount equal to or in excess of the penalty of the bond, it must at least appear that the money was prudently and necessarily expended under competent supervision. In this regard the appellant has wholly failed in its proof. When the work was taken over by the appellant, it was placed in charge of an agent without experience, who was utterly incompetent to supervise or superintend a work of that kind and magnitude. This is amply demonstrated throughout his testimony and by his letters. Thus, in a letter of January 9, 1926,

he said: "Now we are over the first of the year I am beginning to make motions towards getting this contract out of the way. I have a couple of men who are going to look at the dirt sometime this week and will perhaps sublet the entire job of dirt moving. Dostart will handle the cement and by this time next year I expect to be a full fledged gravel crusher myself so in case the bond business gets too bad I can get a job running a crusher for somebody."

In a later communication he said:

"We have about 20 working days to go yet to finish graveling. The grade is done and gravel spread to Kennedy Creek from the the Canadian line and the crusher moved and working on the stretch between Kennedy and Babb. We would have been nearly through but we got a new base for the crusher, cost about $2,000 in place, as the old one was busted when we took the job over, and it took three days to get this rigged up, then the rain started and it rained like hell up there in the hills, and the grade was very soft so we have been laid up for ten days straight, but I think they started up again yesterday. With good weather the thing will be through July 20th, and thank God for that and next time I take over the running of one of those things I don't.

"As far as I know the crusher will be for sale in about three weeks. You can look it over when you go up there and make an offer. Nearly everything except the idea is new. There was a conditional bill of sale outstanding which we had to take up, covering belts, conveyors, trucks, etc. Then we had to replace the bowl, so what we got from Windsor in the way of a crusher wasn't much. We also have three Mack trucks in excellent shape for sale. It cost us about $600 apiece to get them going good, but they have been hitting the ball every day since. In short we now have a real nifty crushing outfit.

"I will let you know several days ahead when we are ready for the final as I want your assistance as I don't know a thing about estimating dirt and after this job is over I will be satisfied to remain in ignorance."

Had the original contractors completed the contract under like conditions, such proof as this would afford no basis whatever for the recovery of damages in an action against the appellant; and the rule works both ways.

We have thus far assumed that if a surety company takes over the work after an abandonment by the contractor, it is discharged from further liability as soon as it has expended an amount equal to or in excess of the penalty of the bond; but see Aus-

plund v. Ætna Indemnity Co., 47 Or. 10, 81 P. 577, 82 P. 12; Watterson v. Owens River Canal Co., 25 Cal. App. 247, 143 P. 90; State v. Cornwall, 102 Or. 220, 201 P. 1072; 9 C. J. 857.

The judgment is affirmed.