2003 WY 171

**NUHOME INVESTMENTS, LLC, a South Dakota Limited Liability Company, Appellant (Plaintiff),**

v.

**Russell E. WELLER, Jr. and Elizabeth C. Weller, husband and wife, Appellees (Defendants).**

No. 02–254.

Supreme Court of Wyoming.

Dec. 31, 2003.

Representing Appellant: Colin M. Simpson of Simpson, Kepler & Edwards, LLC, Cody, WY. Argument by Mr. Simpson.

Representing Appellees: Thomas C. Bancroft, Worland, WY. Argument by Mr. Bancroft.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

LEHMAN, Justice.

[¶1] NuHome Investments, LLC (NuHome) appeals the district court order granting summary judgment in favor of Russell E. and Elizabeth C. Weller (the Wellers). The district court granted the Wellers' motion for summary judgment finding that the contract on which NuHome sued provided for a one-year period of limitation. The complaint was not filed within one year of the alleged breach, thus the action was time barred. The district court additionally found that NuHome could not assert an unjust enrichment claim because it did not provide the Wellers with any goods or services and it had not been assigned the right to an unjust enrichment claim. We affirm.

### ISSUES

[¶2] NuHome asserts four issues on appeal:

1. The one-year statute of limitations contained in Paragraph 14 of the Parties' contract is not enforceable in the State of Wyoming, or any other governing jurisdiction.[1]

2. If the provisions of Paragraph 14 of the Parties' contract are controlling, [the

---

1. The parties refer to the one-year period contained in the contract as a statute of limitations. Contractually, the provision is identified as a period of limitation. We similarly find it appropriate to refer to the provision as a period of limitation because the one-year time period is set by contract rather than statute, and we will do so throughout the body of our discussion.

Wellers] did not establish that no material facts exist as to the date of the breach of the contract.

3. [The Wellers] reaffirmed the contract in 2001 which began the statute of limitations anew.

4. Unjust enrichment was an available remedy for [NuHome] under the undisputed facts in this case.

The Wellers present two issues:

1. Did the district court commit error when it concluded that a one year statute of limitations, which was written into a modular home purchase contract by the seller, is enforceable against Nuhome, the assignee of the seller?

2. Did the district court commit error when it concluded that Nuhome, which provided no services or materials to the Wellers, had no right to pursue an unjust enrichment claim against the Wellers?

### FACTS

[¶ 3] The Wellers entered into a contract with Trails West Builders (Trails West) on January 26, 1999. Bruce Massey (Massey) signed the contract on behalf of Trails West. The contract provided for the purchase, delivery, and setup of a manufactured home on the Wellers' property in Park County, Wyoming. Additionally included in the contract was an agreement for the construction of a crawl space, two covered decks, and a garage. Under the contract the Wellers were to make a down payment, with the balance of the purchase price to be paid to Trails West no later than fourteen days after "notice of completion" of the home. The contract consisted of a pre-printed form and three addendums and contained the following language:

14. ONE–YEAR PERIOD OF LIMITATION. I understand and agree that—if either of us should breach this contract— the other of us shall have only one year, after the occurrence of that breach, in which to commence an action for a breach of this contract.

[¶ 4] The home was delivered to the Weller site on March 12, 1999. Many problems arose with the completion of the home. After delivery, the home was not promptly assembled, which allowed rain and snow to enter the home and cause considerable damage. Foundation problems resulted in a low corner of the house. Additionally, there were buckled siding, defects in the oven, incorrectly installed water pipes, the roof leaked, and various other problems. In addition to the problems with the home, Massey had problems with his financing which increased the time of construction. These problems eventually resulted in the Wellers and Massey agreeing to a fourth addendum to the contract. Under this change, the Wellers agreed that they, instead of Massey, would pay all the subcontractors for the services rendered and also pay for the materials as the job progressed. These amounts would then be credited to the final contract at closing. The Wellers paid the down payment and various other amounts to Massey but, because of the fourth addendum, paid him nothing after February 2, 1999.

[¶ 5] NuHome became involved in this situation in June of 1999. NuHome had loaned money to Massey so that he could purchase the manufactured home he sold to the Wellers. On June 4, 1999, Massey assigned to NuHome all proceeds under the contract. Accordingly, in June of 1999, NuHome's attorney contacted the Wellers' attorney and demanded that the Wellers pay any money that they owed to Massey directly to NuHome. On June 23, 1999, the Wellers sent a letter indicating that a new contractor had been found and that work was still to be done but that an accounting would be provided when finished.

[¶ 6] Additional correspondence was exchanged between the Wellers and NuHome during the summer of 1999, some of it questioning the assignment. Eventually, Massey provided another assignment to NuHome entitled an "assignment of rights," which was dated October 7, 1999. This second assignment assigned to NuHome "all right, title and interest of the undersigned in and to that certain contract and agreement." In a letter dated November 11, 1999, the Wellers stated that they would not provide an accounting and that NuHome had no recourse against them. The Wellers' home was completed on November 30, 1999, and the Wel-

lers never provided an accounting to Nu-Home. Communications between NuHome and the Wellers ceased following the November 11, 1999 letter until August of 2001 at which time NuHome sent a letter threatening litigation. NuHome then filed its complaint on September 21, 2001.

### STANDARD OF REVIEW

[¶ 7]   Our standard of review for summary judgment is well known.

> Summary judgment is appropriate when no genuine issue as to any material fact exists and the prevailing party is entitled to have a judgment as a matter of law. *Eklund v. PRI Environmental, Inc.*, 2001 WY 55, ¶ 10, 25 P.3d 511, ¶ 10 (Wyo. 2001); see also W.R.C.P. 56(c). A genuine issue of material fact exists when a disputed fact, if it were proven, would have the effect of establishing or refuting an essential element of the cause of action or defense that has been asserted by the parties. *Williams Gas Processing–Wamsutter Co. v. Union Pacific Resources Co.*, 2001 WY 57, ¶ 11, 25 P.3d 1064, ¶ 11 (Wyo.2001). We examine the record from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. *Id.* We evaluate the propriety of a summary judgment by employing the same standards and by using the same materials as were employed and used by the lower court. *Scherer Constr., LLC v. Hedquist Constr., Inc.*, 2001 WY 23, ¶ 15, 18 P.3d 645, ¶ 15 (Wyo.2001). We do not accord any deference to the district court's decisions on issues of law. *Id.*

*Trabing v. Kinko's, Inc.*, 2002 WY 171, ¶ 8, 57 P.3d 1248, ¶ 8 (Wyo.2002).

### DISCUSSION

[¶ 8]   First, NuHome argues that the one-year period of limitation set forth by the contract is unenforceable in Wyoming or any other governing state as a matter of public policy.[2] We begin by noting that in Wyoming we "recognize the basic right of persons, real and artificial, to freely enter into contracts." *Roussalis v. Wyoming Med. Ctr., Inc.*, 4 P.3d 209, 245 (Wyo.2000) (quoting *Sinclair Oil Corp. v. Columbia Cas. Co.*, 682 P.2d 975, 978 (Wyo.1984)). We therefore generally must be cautious in resolving issues involving agreed upon contract provisions and arguments that these provisions violate public policy. *Roussalis*, 4 P.3d at 245.

> Our reluctance to redraw or nullify the provisions of a contract made by competent parties draws strength from the eloquent statement from the United States Supreme Court which we favorably quoted in *Sinclair Oil Corp.*:
>
>> The right of private contract is no small part of the liberty of the citizen, and that the usual and most important function of courts of justice is rather to maintain and enforce contracts, than to enable parties thereto to escape from their obligation on the pretext of public policy, unless it clearly appear that they contravene public right or the public welfare. It was well said by Sir George Jessel, M.R., in Printing & Co. v. Sampson, L.R. 19 Eq. 465: "It must not be forgotten that you are not to extend arbitrarily those rules which say that a given contract is void as being against public policy, because if there is one thing which more than another public policy requires it is that men of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts, when entered into freely and voluntarily, shall be held sacred, and shall be enforced by courts of justice. Therefore, you have this paramount public policy to consider—that you are not lightly to interfere with this freedom of contract."

**2.** The contract provided that the law of the state in which the Wellers signed the contract would govern. There is some indication that the Wellers signed the contract in Oregon. The district court did not decide this matter finding that the result would be the same regardless of the law applied. Both parties seem to agree with the district court on this point, and thus neither expressly argues for the application of a particular state's law. We agree that the result will be the same regardless of the law applied, and we will therefore apply Wyoming law.

[*Sinclair Oil Corp. v. Columbia Cas. Co.,* 682 P.2d 975, 978–79 (Wyo.1984) ] (quoting *Baltimore & Ohio Southwestern Railway Co. v. Voigt,* 176 U.S. 498, 505, 20 S.Ct. 385, 387, 44 L.Ed. 560, 565 (1900)).

*Roussalis,* 4 P.3d at 245.

■ [¶ 9] This court has often showed its commitment to uphold the right of competent parties to freely contract for various provisions. For instance, under appropriate circumstances we allow parties the freedom to contract for forum selection clauses, choices of law clauses, and we rarely get involved in the adequacy of consideration. See *Durdahl v. Nat'l Safety Assocs., Inc.,* 988 P.2d 525, 527–28 (Wyo.1999); *Resource Technology Corp. v. Fisher Scientific Co.,* 924 P.2d 972, 975 (Wyo.1996); *Brodie v. General Chem. Corp.,* 934 P.2d 1263, 1268 (Wyo.1997). In particular, when considering forum selection clauses, after discussing how most courts today approach such clauses, we adopted a similar approach and held that forum selection clauses are prima facie valid and will be enforced absent a demonstration by the party opposing enforcement that the clause is unreasonable or based upon fraud or unequal bargaining positions. *Durdahl,* 988 P.2d at 527.

■ [¶ 10] The recognized rationale of enforcing forum selection clauses is that it enhances contractual predictability and comports with traditional concepts of freedom of contract. *Id.* at 527 (citing *Voicelink Data Servs., Inc. v. Datapulse, Inc.,* 86 Wash.App. 613, 937 P.2d 1158, 1160 (1997)). In adopting such a rule, we found that it was consistent with our commitment to enforce the provisions of the contract between the parties as long as the provisions are not contrary to Wyoming law, public policy, or the general interests of Wyoming's citizens. *Id.* A contractual period of limitation similarly enhances predictability, and enforcing it would similarly comport with the concept of freedom of contract. It therefore seems that a similar approach should apply when evaluating contractual period of limitation clauses.

■ [¶ 11] In making this determination, we consider the purpose of statutes of limitation. Statutes of limitation have exist-ed in the jurisprudence of the United States and the State of Wyoming for some time. *Duke v. Housen,* 589 P.2d 334, 340 (Wyo. 1979). "They are pragmatic devices to save courts from stale claim litigation and spare citizens from having to defend when memories have faded, witnesses are unavailable by death or disappearance and evidence is lost." *Id.* See also *Rawlinson v. Cheyenne Bd. of Pub. Utilities,* 2001 WY 6, ¶ 9, 17 P.3d 13, ¶ 9 (Wyo.2001). The very purpose of a statute of limitations is to require diligence and prevent parties from sleeping on their rights. A shorter period of limitation promotes this purpose.

■ [¶ 12] We also consider the Wyoming statutes providing for statutes of limitation. Wyo. Stat. Ann. § 1–3–102 (LexisNexis 2003) states: "Civil actions can only be commenced within the periods prescribed in this chapter, after the cause of action accrues, but where a different limitation is prescribed by statute, that shall govern." NuHome argues that this statute establishes the public policy of the legislature that limitations of actions are to be governed by statute and not by the agreement of the parties. NuHome also contends that by setting out comprehensive limitation periods the legislature has mandated these specific periods. We certainly agree that the legislature can declare public policy through statute, but nothing in these sections forbids the shortening of the limitation period by contract. The plain language shows that the legislature's concern is setting a cutoff for the ability to bring an action. The language of the statute uses the word "within." The word "within" generally means not beyond. *Webster's New Collegiate Dictionary,* 1347 (1977). Clearly, contractually created shorter periods are not beyond and are within the limitation period.

■ [¶ 13] NuHome then points to Wyo. Stat. Ann. §§ 1–3–111 and 1–3–105(a)(i) (LexisNexis 2003) as providing ten-year statutes of limitation and thus the action was clearly timely. Section 1–3–111 states: "Unless the parties to the contract agree otherwise, no action to recover damages, whether in tort, contract, indemnity or otherwise, shall be brought more than ten (10) years after substantial completion of an improve-

ment to real property." Section 1–3–105(a)(i) (LexisNexis 2003) provides: "Civil actions other than for the recovery of real property can only be brought within the following periods after the cause of action accrues: (i) Within ten (10) years, an action upon a specialty or any contract, agreement or promise in writing." We find nothing in the language of either of these statutes to stand for the proposition that the legislature has declared that parties cannot contract for a shorter limitation period. Indeed, if anything, § 1–3–111 specifically identifies the legislature's willingness to allow the parties to contract for a different period of limitation. We therefore do not believe that shorter contractually agreed upon period of limitation clauses violate public policy.

[¶ 14] Other states considering contractual period of limitation clauses have come to similar conclusions. Important to our discussion, Oregon has embraced the notion of allowing contracting parties to select a shorter period of limitation. Oregon allows parties to a contract to stipulate that an action for a breach of contract must be brought within a certain period shorter than the applicable statute of limitations and, as long as the limitation is reasonable, it will be upheld. *Ausplund v. Aetna Indemnity Co.*, 47 Or. 10, 81 P. 577, 581 (1905); *Beck v. General Ins. Co.*, 141 Or. 446, 18 P.2d 579 (1933). See also *Biomass One, L.P. v. S–P Constr.*, 103 Or. App. 521, 799 P.2d 152, 154–55 (1990) (applying a shorter contractual period of limitation). Several of our sister states have similarly allowed contracting parties to shorten the period for bringing an action, provided the shorter period is reasonable. *Fireman's Fund Ins. Co. v. Sand Lake Lounge*, 514 P.2d 223, 226 (Alaska 1973); *Hambrecht & Quist Venture Partners v. American Med. Int'l, Inc.*, 38 Cal.App.4th 1532, 46 Cal. Rptr.2d 33 (1995); *Hepp v. United Airlines, Inc.*, 36 Colo.App. 350, 540 P.2d 1141 (1975); *Silverhorn v. Pacific Mut. Life Ins. Co.*, 23 Haw. 160 (Haw.Terr.1916); *Medrano v. Prod. Eng'g Co.*, 332 Ill.App.3d 562, 266 Ill. Dec. 265, 774 N.E.2d 371, 375–376 (2002); *Clark v. Lund*, 55 Utah 284, 184 P. 821 (1919); *Syrett v. Reisner McEwin & Assocs.*, 107 Wash.App. 524, 24 P.3d 1070 (2001).

[¶ 15] The United States Supreme Court has also addressed the matter. In *Missouri, Kansas & Texas Railway Co. v. Harriman*, 227 U.S. 657, 672–73, 33 S.Ct. 397, 57 L.Ed. 690 (1913), the Court upheld a provision in a shipping contract which required a suit for damage to be brought within ninety days "any statute or limitation to the contrary notwithstanding." The Court remarked that:

The policy of statutes of limitation is to encourage promptness in the bringing of actions, that the parties shall not suffer by loss of evidence from death or disappearance of witnesses, destruction of documents or failure of memory. But there is nothing in the policy or object of such statutes which forbids the parties to an agreement to provide a shorter period, provided the time is not unreasonably short.

*Id.*

[¶ 16] Alaska allows for the parties to contract for a shorter period of limitation than that provided by the legislature and provided the following excellent explanation:

Although the parties can not at the time of contracting effectively bargain not to plead the statute or that the time for suit shall be longer than that allowed by statute, it is not against the public interest that they shall then agree upon a shorter time limit than that fixed by statute if the time agreed upon is not so short as to be unreasonable in the light of the provisions of the contract and the circumstances of its performance and enforcement. Such time limits in insurance policies have often been held valid. These agreements are not at all inconsistent with the purposes underlying the statute of limitations. Those purposes are to prevent the bringing and enforcement of stale claims, involving extra danger of fraud and mistake, unless the debtor has expressed a voluntary assent within the statutory period. An express provision fixing a shorter limit merely hastens the enforcement; and it is not made invalid by being included from the beginning in the contract to be enforced. If held invalid, it must be on the ground that the terms are unconscionable and that un-

fair advantage has been taken of a claimant whose bargaining position was inferior. *Fireman's Fund Ins. Co.*, 514 P.2d at 226 (quoting 1A Corbin, Contracts § 218 at 311–312 (1963)). We agree with the reasoning of these courts. Considering the purpose of statutes of limitation and the language of our statutes, we find that an approach similar to that used when evaluating forum selection clauses should be used when considering contractual periods of limitation. We hold that contractual periods of limitation are prima facie valid and will be enforced absent a demonstration by the party opposing enforcement that the clause is unreasonable or based upon fraud or unequal bargaining positions. See *Durdahl*, 988 P.2d at 527–28.

[¶ 17] We must now determine if the period of limitation before us is unreasonable or based upon fraud or unequal bargaining positions. NuHome does not present an argument of how a one-year period of limitation is unreasonable in this circumstance, and we do not find a one-year period to be per se unreasonable. In fact, in some instances Wyoming statute specifically allows parties to a contract to shorten the applicable period of limitation to one year. See Wyo. Stat. Ann. § 34.1–2–725(a). Similarly, NuHome has not alleged fraud or unequal bargaining position. Indeed, it should be noted that in this case Massey supplied the contract including the one-year provision. NuHome, having stepped into Massey's shoes, would thus be considered the drafter of this particular contract and is consequently not in a position to assert unequal bargaining position arguments. We hence hold that the one-year period of limitation set forth in this contract is valid.

[¶ 18] NuHome next argues that even if the one-year period of limitation is valid, the Wellers failed to establish the date from which to measure the breach. In making this argument, NuHome asserts that the last addendum to the contract essentially switched the responsibilities of Massey and the Wellers. NuHome contends that the Wellers became the general contractor under the contract, and they were then obligated to give Massey notice of completion of the home because the Wellers' payment for the home was due fourteen days after notice of completion. NuHome therefore argues that the period of limitation never began running because the Wellers never gave notice of completion. We disagree.

[¶ 19] The performance promised by the Wellers was payment. In the fourth addendum, the Wellers never agreed to give notice of completion of the house. They only agreed to pay the subcontractors for services rendered and materials supplied. In fact, that addendum specifically provided that "[t]his Addendum shall not affect any provisions of the January 26, 1999 Purchase Agreement, and Addendums 'A,' 'B' and 'C.' " Furthermore, it is not the buyer of a house that gives notice of completion; it is the contractor. It would make little sense to allow a buyer to withhold payment until he gives notice of completion because he could then withhold payment indefinitely by simply refusing to give notice of completion.

[¶ 20] The Wellers' affidavit asserts that the home was complete on November 30, 1999. NuHome has never disputed this date and never indicated that it was waiting for notice of completion. NuHome apparently thought the home was complete in June of 1999 because it demanded payment at that time. Furthermore, NuHome had an indication that there was a breach when the Wellers refused to provide an accounting on November 11, 1999. Certainly no one has claimed that the house was complete later than September 21, 2000, which is one year prior to the September 21, 2001 filing date. Although there was some question of whether the breach was when the Wellers refused to provide an accounting or fourteen days after the house was complete, under any view of the facts, this was more than one year before the filing date. Hence, we see that there is no **material** question of fact.

[¶ 21] NuHome next contends that a letter written by the Wellers' attorney reaffirmed the contract on August 14, 2002. The text of that letter is:

Re: Ron Kiefer

Dear Colin:

I am in receipt of your letter concerning your client NuHome Investments, LLC. I forwarded your letter to my clients and to date have not heard from Russ Weller.

However, I have been in contact with Ron and Jan Kiefer and yesterday received an accounting in rough form. I will be meeting with the Kiefers later this week and once that meeting is concluded we will make the decision of how we will proceed. I ask that you hold off filing any complaints until I have had the opportunity to review the accounting and go over my clients' legal positions later this week.

This letter references a different client, not the Wellers. Although the Wellers are mentioned, it is only to say that they have not been heard from. This writing does not clearly identify and acknowledge the Wellers' obligation. See *Longstaff v. Mills*, 773 P.2d 149, 152 (Wyo.1989); Wyo. Stat. Ann § 1–3–119 (LexisNexis 2003). Generally, for an obligation to be reaffirmed there must be a clear written acknowledgement of the other party's claim. *Longstaff*, at 152. NuHome is correct that letters that make excuses for non-payment and do not deny the obligation nor regard the indebtedness as non-existent are sufficient to acknowledge and revive the debt. However, the letter provided above does not even meet these criteria. All that this letter acknowledged was that the Wellers had received the letter from NuHome's attorney. For that reason, we do not agree that the Wellers reaffirmed the contract.

 [¶ 22] Lastly, NuHome argues that it should be allowed to pursue an unjust enrichment claim. One who seeks relief based on unjust enrichment must prove all of the following four elements: (1) Valuable services were rendered, or materials furnished, (2) to the party to be charged, (3) which services or materials were accepted, used and enjoyed by the party to be charged, and (4) that the services or materials were furnished under such circumstances as would reasonably notify the party to be charged that the plaintiff, in rendering such services or furnishing such materials, expected to be paid by the party to be charged. Without such payment, the party would be unjustly enriched. *Amoco Prod. v. EM Nominee Partnership*, 2 P.3d 534, 541 (Wyo.2000). Obviously, NuHome does not meet these criteria because it did not provide any materials or services to the Wellers. Accordingly, NuHome claims that it should be able to bring this unjust enrichment claim by virtue of the assignment of rights that it received from Massey.

[¶ 23] The assignment from Massey to NuHome provided for an assignment of "all right, title and interest of the undersigned in and to that certain contract and agreement by and between Trails West Builders and Russ Weller." Unjust enrichment is an equitable remedy which generally implies a contract where none exists. An unjust enrichment claim is not a right under the contract. See *Silver Dollar Motel, Inc. v. Taylor Elec. Co.*, 761 P.2d 1006, 1009 (Wyo.1988). The plain language of the assignment contract uses the words "in and to that certain contract." Had Massey wished to assign rights other than his contract rights, he simply could have assigned all his rights, claims, or causes against the Wellers. However, he did not do so. Rather, Massey limited the assignment to rights under the contract. Therefore, we find that the right to make an unjust enrichment claim, if one existed, was not assigned to NuHome. Accordingly, NuHome has no right to make an unjust enrichment claim in this case.

## CONCLUSION

[¶ 24] For the reasons stated above, we affirm the district court order granting summary judgment in favor of the Wellers.