Gray vs. McDonald.

## GRAY VS. MCDONALD.

R., having contracted to erect a building, assigned his contract to C., the latter executing to him, at the time, a bond, with M., G. and others as sureties, conditioned to pay R. at certain rates for stone already quarried for such building. Afterwards, with the full knowledge and consent of the sureties, C. assigned, the building contract to said M., with a condition that M. was to perform all the undertakings and assume all the risks, liabilities and responsibilities imposed upon C. as assignee of said contract. M. accepted the assignment, performed the work, and received the benefits of the building contract, but failed to pay for the stone according to the condition of C.'s bond to R.; and R obtained judgment upon the bond against M. and G. and other sureties, M. de-

clining to take charge of and conduct the defense of the action, though request-
ed to do so by G. and the other sureties. In an action by G. (who had paid the
judgment), against M. to recover the amount of such judgment and expenses of
litigation, *Held*, that although the name of M. had not been formally inserted in
said bond to R. as principal therein instead of C., yet he had in fact assumed
the character and responsibilities of such principal, and was liable in the action
upon an implied promise to indemnify G. as his surety.

APPEAL from the Circuit Court for *Dane* County.

This was an appeal by the defendant from a judgment in
favor of the plaintiff. The case is stated in the opinion.

*Hopkins & Foote*, for appellant:

The plaintiff claims that the defendant, in consideration of
the assignment to him of the contract, agreed to perform all
the undertakings, and assume all the risks, liabilities and re-
sponsibilities imposed upon or assumed by Campbell, among
which was the liability to pay for the "dimension stone," and
save harmless his sureties. But this agreement was not in
writing, and as the liability of Campbell to indemnify his
sureties was not thereby *discharged*, the agreement of defend-
ant was collateral, and was void under the Statute of Frauds.
*Emerick v. Sanders*, 1 Wis., 77, 98 et seq.; 15 id., 596.

*S. U. Pinney*, and *Abbott & Hutchinson*, for respondent,
argued that the promise of *McDonald* to pay for the stone in
question was a part of the consideration for the assignment to
him of the building contract, and was not within the Statute
of Frauds. 9 Parsons on Con., 305; *Williams v. Leper*, 3
Burr., 1886; *Castling v. Aubert*, 2 East, 325; *Barrell v. Trussell*,
4 Taunt., 117; *Nelson v. Boynton*, 3 Met., 396; *Alger v. Sco-
ville*, 1 Gray, 391; *Wait v. Wait*, 28 Vt., 350; *Cross v. Rich-
ardson*, 30 id., 641; *Todd v. Toby*, 29 Me., 219; *Scott v. Thomas*,
1 Scam., 58; *Hall v. Marston*,, 17 Mass., 575. 2. The prom-
ise of *McDonald* was not made to Rycraft. To bring a prom-
ise within this clause of the statute, it must be made to the
party to whom the person undertaken for is liable. *Eastwood
v. Kenyon*, 11 Adolph & E., 438 (39 E. C. L., 137); *Preble v.
Baldwin*, 6 Cush., 549; *Weld v. Nichols*, 17 Pick., 538; *Pratt*

*v. Humphrey*, 22 Conn., 317; *Mersereau v. Lewis*, 25 Wend., 247; *Barker v. Bucklin*, 2 Denio, 50; *Alger v. Scoville, supra*. In *Lawrence v. Fox*, 20 N. Y., 268, and *Burr v. Beers*, 24 id., 178, in which the facts were, in respect to the Statute of Frauds, the same as in this, it was not supposed that such a point was tenable, as it does not appear to have been hinted at by the court or counsel. 3. *McDonald*, having accepted the assignment and enjoyed its benefits, must perform the conditions upon which he obtained it. The law implies the promise; and where that is the case, the promise is not within the statute. *Goodwin v. Gilbert*, 9 Mass., 510; *Felch v. Taylor*, 13 Pick., 133.

*By the Court*, COLE, J. There would seem to be some defect in the law if the judgment in this case could not be sustained on some well settled principle. The case presents in brief this state of facts: One Rycraft had a contract with the state for the building and enlargement of the state capitol. In consideration of a certain sum to him paid by the citizens of Madison, he assigned this contract to one James Campbell. At the time of such assignment, Campbell executed to Rycraft a bond, which was signed by the parties to this suit, with others, as sureties, conditioned to pay the obligee sixty cents per cubic foot for all dimension stone at the railroad depot at Madison, and twenty-five cents per cubic foot for all dimension stone at the quarry near Prairie du Chien, suitable for and required in the building of the capitol enlargement under the contract. Afterwards, with the full knowledge and consent of the sureties, Campbell assigned the building contract to *McDonald*, upon certain terms, among which was this condition, that *McDonald* was to perform all the undertakings and assume all the risks, liabilities and responsibilities imposed upon or assumed by Campbell as assignee of the contract between the state and Rycraft. *McDonald* did not sign these conditions. But the jury found upon

the evidence that he accepted the assignment with the terms imposed. He accepted the assignment, performed the work, received the benefits of the contract, but failed to pay for the dimension stone according to the condition of the bond given by Campbell to Rycraft. In consequence of this breach, Ry= craft brought suit upon the bond, and recovered judgment against the respondent and some of the other sureties. *McDonald* was made a party to that action, and was requested by the sureties to take charge of it and conduct the defense. This he declined to do. The respondent paid the amount claimed in this suit, in paying the judgment and expenses of litigation. These are the leading facts stated in the complaint, and fully sustained by the proof on the trial. And the question is, can the action be maintained, and if so upon what ground? The general equity of the case would seem to be clear and irresistible, but it is not so obvious upon what principle the liability of the appellant arises. The counsel for the respondent claim that a right of action is given by one or more relations which the parties held in respect to each other.

First, it is claimed and insisted that the necessary result of the various transactions was to create the relation of principal and surety between *McDonald* and the other obligors in the bond; that *McDonald* really and truly stepped into Campbell's shoes, acquired his rights and assumed all his liabilities, and consequently became primarily liable to pay the debt to Rycraft; that the relation of principal and surety thus existing between the parties, the respondent has his remedy against the appellant upon an implied promise to indemnify and make good the money paid for the appellant's use and benefit; and further, that all rights and remedies of the creditor Rycraft enure by an equitable subrogation to the benefit of the respondent.

Again, it is argued that the action is maintainable upon another ground, namely, the undertakings and promises entered into by *McDonald* with Campbell when he accepted the assign-

ment of the building contract with the terms imposed, upon the principle that where one, for a valuable consideration, makes a promise to another for the benefit of a third person, such third person may maintain an action upon such promise, as was done in *Lawrence v. Fox*, 20 N. Y., 274; *Burr v. Beers*, 24 id., 178, and analogous cases.   Se also *Kimball v. Noyes et al.*, 17 Wis., 695.

Without stopping to affirm or deny the soundness of the latter proposition, it seems to me that the liability of the appellant may be safely and properly rested upon the former ground.   Can it then be said that the relation of principal and surety existed between these parties, as the result of the various transactions above referred to ?   If the substance and not the mere form of these transactions is regarded, the question must be answered in the affirmative. In the first place, these parties, with others, became sureties on the bond given by Campbell to Rycraft when the building contract was assigned by the latter to the former.   The giving of this bond was doubtless a material part of the consideration for the assignment.   Rycraft thereby obtained security for the payment of the dimension stone which he had procured for the building.   Had Campbell gone on under the contract, he would have been primarily liable to pay for these stone. But he assigned the contract to *McDonald*, with the knowledge and consent of the sureties.     That is, *McDonald*, who was before surety, saw fit, with the consent of all concerned, to become the principal, to step into Campbell's shoes, accept the contract, assuming all his liabilities, and really becoming the principal debtor.   He performed the work and derived whatever profit and advantage there was in the contract.   It is true, the bond was not changed by inserting therein his name as principal in place of that of Campbell.   But does this circumstance go so far as to control the effect of all the other facts and circumstances of the case, and destroy the legal consequences which would otherwise flow from them ?   Suppose

Rycraft had collected the value of the dimension stone of *McDonald*: could the latter turn round upon the respondent for contribution? Would a court of law or equity entertain such a claim a moment? Manifestly not; and why? Because under the arrangement *McDonald* became primarily liable to pay for these stone. Suppose Rycraft had collected the judgment of Campbell: would not the latter have had a right of action against *McDonald* for the amount he had been compelled to pay? Undoubtedly, and for the same reason. The relations of the parties, then, have become changed; he who was at the outset merely a surety, has become the principal, and has incurred the obligation of that relation in respect to the other parties. The mere form of the transaction is immaterial if the intention is apparent, and certainly the rights and duties of the parties are to be determined upon matters of substance rather than upon technical grounds. The material question is, did not the acts of the parties give rise to the relation of principal and surety? There is no difficulty in determining where the burden of paying for the dimension stone must ultimately rest. Although Rycraft might recover the value of such stone by judgment against the sureties on the bond given him by Campbell, yet *McDonald* is finally liable, because he has virtually assumed Campbell's place. This is clear from the whole transaction. Why not fix upon him the duties and liabilities of Campbell, so far as the sureties are concerned, and enable them to proceed against him for indemnity upon the same ground they would have been permitted to proceed had they paid the debt for Campbell? Had they paid the debt for Campbell, they could have immediately brought an action at law against him upon an implied promise to indemnify, or for money paid, laid out and expended for his use. The same equity, under our present system of practice, which would have enabled them, after payment, to recover the amount of Campbell, warrants them, under the facts and circumstances of this case, in recovering it of *McDonald*,

who, with the consent of all, became the principal debtor. And as between him and the sureties against whom the judgment was rendered, it was primarily his duty to pay Rycraft for the dimension stone.

This view disposes of the case, and renders it unnecessary to notice the other points discussed by counsel.

The judgment of the circuit court is affirmed.