Argued October 19, affirmed November 22, 1921.

# State of Oregon for Use of SUETTER *v.* CORNWALL et al.

### (201 Pac. 1072.)

**Pleading—Defendants, Counterclaiming, Held not Compelled to Elect Between Their Claims Against Plaintiff as Surety and as Assignee for His Principal.**

1. Where the surety of a subcontractor in bond given the contactor sued the contractor for labor, provisions and materials furnished to the subcontractor at the instance of contractor, who counterclaimed for losses by the subcontractor's breach of the contract, and a subsequent abandonment thereof by the plaintiff surety, who on such breach had taken an assignment of contract and attempted to complete it, the defendants' attempt by the counterclaim to hold the plaintiff surety liable on the bond, and also as assignee of the subcontractor, were not inconsistent defenses between which the defendants might be compelled to elect.

**Principal and Surety—Alleged Misrepresentations as to Identity of the Obligee in a Bond Held Immaterial.**

2. Alleged misrepresentations to the surety on the bond of a subcontractor that E. C., the obligee in the bond, was one S. C., who was in fact the father of the obligee, was immaterial, the obligee having complied with his part of the agreement.

**Principal and Surety—Surety Held Liable for Overpayments by Way of Advancements by the Creditor to the Principal.**

3. Where a contractor's agreement with a subcontractor provided that the contractor would pay the subcontractor certain amounts for earth removed, pay subcontractor's employees, blacksmith bills, and repair work as an advancement to be deducted from the compensation, payments in pursuance thereof were legitimate expenses for which the subcontractor's surety was liable as against the contention that his bond did not undertake to repay, and that it was not an indemnity bond.

**Subrogation—Surety Taking Assignment of Contract from Principal Subrogated to His Rights.**

4. A surety, who, on default of his principal, has taken an assignment of contract with the consent of the obligee in the bond in order to complete the contract, assumes all the responsibilities of his principal, and is subrogated to all the rights of the principal.

**Subrogation—Surety on Subcontractor's Bond cannot Object on Account of Work Done Outside the Contract Which is Settled and Paid for at His Suggestion.**

5. Where a subcontractor on a portion of a public highway, who had given a bond with surety to the principal contractor, obtained

---

4. On subrogation of surety who pays judgment against principal, see note in 68 L. R. A. 520, 523, 528, 534, 572, 581.

5. Right of witness to use memoranda to refresh and assist memory, see notes in 98 Am. Dec. 619; 35 Am. Rep. 56; 8 Ann. Cas. 210.

a contract with the county to grade gateways approaching the high-way, which work was done at the same time as his other contract work, and by the same men and teams, so that it was impossible to segregate the cost, and on breach of his subcontract, subcontractor refused to assign the subcontract to his surety to complete the contract, unless subcontractor was paid for the county work, to which the surety assented, *held* that the matter having been adjusted and paid according to the direction of the surety was eliminated from the case.

### Witnesses—Testimony, and not Memorandum, to Refresh Recollection, is the Real Evidence.

6.   Where a witness refreshes his recollection by reference to memorandum of account, the proof depends, not upon the itemized account or schedule as primary evidence, but upon the sworn testimony of the witness.

### Witnesses — Refreshing Recollection from Memorandum Held Permissible.

7.   In an action involving the liability of a surety of a contractor, the obligee, in testifying to payments and advances made to the principal in the bond, was entitled to refresh his memory by reference to a statement prepared from time-book, check-book, and bills and memorandum of labor, materials and expenses usually kept in performance of such work, prepared by the witness.

### Highways—Principal Contractor Held to have Complied With His Agreement as to Payments to Subcontractor.

8.   Where the principal contractor on a highway contract agreed with a subcontractor, for whom plaintiff was surety, to pay the subcontractor 85 per cent of the monthly estimates of the work done, and also to pay the workmen and repairs for the subcontractor by way of advancements, and it was necessary to forward the engineer's estimates to the state highway engineer for approval, there was no default on the part of the principal contractor as to payment where, though he did not pay the full 85 per cent during the month, he had, before the return of the estimate on approval, advanced money in payment of labor, etc., in excess of the amount then due.

### Principal and Surety—Advances to Subcontractor Held not Overpayment by the Creditor.

9.   Where a contractor agreed with a subcontractor for whom plaintiff was surety to pay a stipulated compensation for construction work, and also to pay employees of the subcontractor, and to pay blacksmith and repair work by way of advancements on the contract, money so advanced for expenses, etc., though exceeding the per cent of compensation per month which the subcontractor was

---

6.   The question of admissibility in evidence of memorandum on check stubs is discussed in a note in 42 L. R. A. (N. S.) 727.

On admissibility in evidence of party's own books of account, see note in 52 L. R. A. 545.

to receive, were legitimate under the contract, and not overpayments of which the surety could take advantage.

**Principal and Surety—Testimony That Principal's Default on Contract During Dry Season Caused Additional Loss by Completion During Rainy Season Held Admissible.**

10. In an action involving the liability of a surety on a construction contract on which the principal had defaulted, and which the surety had abandoned before completion, testimony to damages by reason of the delay to carry out the contract within the time specified, which was the dry season, by reason of additional expense in obtaining and hauling the gravel called for in the wet season, was admissible under the rule that the damages were such as were within the contemplation of the parties as a probable result of the breach, such rule including special damages where the special circumstances were known by or communicated to the party at the time the contract was made.

**Evidence—Testimony as to Contents of Alleged Assignment Admissible Where Assignment not Available.**

11. In an action involving the liability of a surety who had taken an assignment of his principal's contract on the principal's default, testimony of the obligee in the bond to the contents of the alleged assignment was properly admissible where it appeared that the assignment was not available.

**Principal and Surety—Testimony Held to Show That Obligee's Damages were Properly Measured by Market Cost of Completing the Contract.**

12. Where, in an action involving the liability of a surety for a contract not completed, the obligee being obliged to complete the work, the obligee, after testifying to payments made by him for work and material, also testified that he paid the prevailing price for wages and the market price for materials, objection that the verdict was founded on what the obligee had paid, and not what was the reasonable cost of completion, was without merit.

**Principal and Surety — Instruction as to Surety's Liability Held Properly Refused as Confusing.**

13. Where, on the default of a contractor, his surety, in an attempt to complete it, took an assignment of the contract from his principal, in an action involving the surety's liability to the obligee in the bond, as well as his liability as assignee, a requested instruction that the liability of the surety was only commensurate with the liability of the principal was properly refused as tending only to confuse.

**Principal and Surety—Surety Assuming Contract Under Assignment Thereof Held not Entitled to Pay for Labor in Excess of Contract Price.**

14. Where a surety on a contract on default of his principal took an assignment of the contract and attempted to complete it, such contract providing for certain advancements for labor, repairs, expenses, etc., it was not error to fail to allow the surety payment

for certain labor furnished by him in his attempt to complete the contract, as such allowance to him as contractor would have to be met by an equal charge against him on his liability as surety.

From Yamhill: H. H. BELT, Judge.

Department 1.

In May, 1919, the state highway commission decided to grade and macadamize the Newberg-West Dayton section of the West Side Highway in Yamhill County. On May 27, 1919, the state highway commission entered into a written contract with E. E. Cummins to do the work. In compliance with the terms of the agreement, E. E. Cummins gave a bond to the State of Oregon in the sum of $19,246.50, signed by himself as principal, and by his father S. E. Cummins, and W. T. Vinton, as sureties. The bond is conditioned on the faithful performance of the contract, and, among other things, that the contractor E. E. Cummins shall promptly pay all laborers, mechanics, subcontractors and materialmen, and all persons who shall supply such laborers, mechanics or subcontractors with materials, supplies or provisions for carrying on such work, and all just debts, dues and demands incurred in the performance of such work.

On July 11, 1919, E. E. Cummins, by a written contract, sublet a portion of the road work, sections 1 to 242 as per engineer's map, to George Cornwall. Cornwall gave E. E. Cummins a bond in the sum of $4,000, with Philip Suetter and Joseph Bixby as sureties, for the faithful performance of the subcontract. According to the terms of the subcontract the work was to be completed by October 15, 1919. The contract, among other things, contained the following stipulations:

"The said first party hereby agrees to pay to the said second party, as compensation for the work and labor included in said grading, the sum of 46 cents per cubic yard for each yard of earth moved in said work and the sum of $1.50 per cubic yard for each yard of rock moved in said work, together with a further compensation of 4 cents per cubic yard for each 100 feet that said earth or rock is moved in excess of 300 feet. And the said first party hereby agrees to pay all persons employed upon said work every second week and to pay all blacksmith bills that may be incurred for repairing equipment and tools used upon said work, said wages and blacksmith bills to be considered as an advancement and to be deducted from the compensation to be paid to the said second party under the terms of this contract.

"It is further understood and agreed that payments under this contract to said second party shall be made every month upon estimates to be furnished by the engineer in charge of the work, at which time said first party shall pay to said second party 85% of all sums due as shown by said estimates, and the balance of 15% shall be paid upon completion of this contract.

"And the said second party further agrees to do all grubbing that may be necessary in grading said portion of said highway and said first party shall pay therefor to said second party such sum as said first party shall receive under his contracts with the said (state) county."

The complaint is based upon a claim of $1,468.69 for labor, provisions and materials furnished by the use plaintiff, Suetter, to George Cornwall, subcontractor, at the special instance and request of defendants, and used in the construction of the work under the contract and bond, between August 14, and September 28, 1919.

Defendants answered admitting the execution of the contract and bond as alleged in the complaint, and

by way of counterclaim in favor of E. E. Cummins and against Philip Suetter, averred in substance the following facts: In compliance with the terms of the contract dated July 11, 1919, signed and sealed by E. E. Cummins and George Cornwall, George Cornwall, as principal, and Philip Suetter and Joseph Bixby, as sureties, on July 11, 1919, duly executed and delivered to E. E. Cummins a bond in the sum of $4,000, setting out a copy of the bond, which is conditioned upon the faithful performance of the subcontract by George Cornwall. Between July 11, and September 6, 1919, Cornwall performed labor and supplied material on the highway. On the latter date Cornwall abandoned the contract, of which Suetter had notice. Thereupon E. E. Cummins requested Suetter to complete the contract. Suetter assumed the contract, and proceeded with the work. Cornwall, for value and with the consent of the other defendants, assigned the subcontract to plaintiff Suetter, including all claims for money for work done under the contract, and Suetter assumed all expenses and debts incurred by Cornwall in connection with the highway. Between July 11, and September 29, 1919, Cornwall and Suetter, as his assignee and surety, performed work on the highway, itemized in answer, amounting as per the contract price to $6,847.61. E. E. Cummins paid to and on account of Cornwall for the work $5,821.75, and since September 19, 1919, has paid for labor employed, and materials and supplies purchased by Suetter for carrying on the work the sum of $1,201.95, making a total of $7,023.70, or an overpayment of $176.09. On September 28, 1916, Suetter abandoned the subcontract.

For a second counterclaim the following is averred in effect: In order to complete the construction, which

Cornwall and Suetter by the contract agreed to do, from October 4, 1919, to January 29, 1920, Cummins expended for necessary labor and materials in the performance of the subcontract, at the reasonable market value the sum of $5,248.92, the contract price for which aggregated $2,040, making an excess of $3,-208.92 expended over the contract price for such work. It will cost $1,419.50 to complete the work of construction of the highway embraced in the Cornwall contract. By reason of the delay in the work by Cornwall and Suetter until the rainy season, E. E. Cummins was caused additional expense in obtaining gravel for the grade, and damaged in the sum of $429, and was damaged in the further sum of $134.85 on account of the delay and failure of Cornwall and Suetter to perform the work and enable Cummins to complete his contract. E. E. Cummins duly performed all of the conditions of the contract on his part.

The reply denied many of the allegations of the answer, and affirmatively averred that Suetter was entitled to receive pay every second week for his labor performed on the highway in accordance with the Cornwall contract; that Cummins failed so to pay Suetter, and in order to collect the money due, he took a formal assignment from Cornwall of all money due from E. E. Cummins; that the defendant did not recognize or accept Suetter as the assignee of Cornwall to perform the work or complete the contract; that by mutual mistake of Suetter and Cornwall the assignment did not correctly express the intentions of the parties, and by mutual agreement it was destroyed; that, owing to the failure of E. E. Cummins to perform the terms of the contract, Cornwall discontinued performing work on September 6, 1919, that thereupon defendant agreed if Suetter would re-

main at work on the highway, E. E. Cummins would pay him for his labor to date and for all labor thereafter performed; and that Suetter continued the work until September 28, 1919, when he ceased for the reason that defendants failed to perform the agreement.

Plaintiff further averred that the defendants falsely represented to him that S. E. Cummins was E. E. Cummins named in the contract; that relying upon such representation plaintiff signed Cornwall's bond as surety after Cornwall had entered upon the performance of his agreement; that E. E. Cummins did not perform his part of the contract with Cornwall, in paying for the labor every second week, and 85 per cent of the monthly estimates of Cornwall's work, so as to protect the sureties on Cornwall's bond; and that by reason thereof such sureties are released.

The cause was tried to the court and a jury, and a verdict and judgment rendered in favor of defendant E. E. Cummins and against Philip Suetter for the sum of $1,688.72. Suetter appeals.

AFFIRMED.

For appellant there was a brief over the names of *Mr. Franklin F. Korell* and *Mr. William A. Carter*, with an oral argument by *Mr. Korell.*

For respondents there was a brief over the names of *Messrs. Vinton & Tooze* and *Mr. Oscar Hayter*, with oral arguments by *Mr. Walter L. Tooze* and *Mr. Hayter.*

BEAN, J.—At the commencement of the trial counsel for plaintiff moved the court for an order requiring defendants to elect whether they relied upon the bond given by Cornwall with Suetter as surety

to E. E. Cummins, or upon the assignment of the contract made by George Cornwall to Philip Suetter. The motion was denied by the court, and plaintiff assigns such ruling as error.

1. It is contended upon behalf of plaintiff that the contract of assignment is inconsistent with the contractual liability of Suetter to the defendants on account of having signed the bond. It is practically conceded that the defendants could not be required to elect, unless the attempt to hold Suetter upon the bond he signed, and also as assignee of the Cornwall contract are inconsistent defenses.

By the execution of the bond by Suetter as surety he became liable for a breach of the contract on the part of Cornwall. This condition was maintained up to the time that Cornwall abandoned the contract. By the breach of the contract by Cornwall, Suetter was rendered liable for whatever damages E. E. Cummins was caused to suffer thereby. Cornwall's contract called for the payment of 46 cents per cubic yard for excavating earth, and no more, except under the circumstances stipulated in the contract. The contract stipulated that Cummins would pay laborers and blacksmith bills every two weeks, which payments were to be treated as advancements on the payments to Cornwall. In order to perform this condition of the contract Cummins had to pay more than Cornwall earned, or more than Cornwall agreed to do the work for. Cummins was thereby damaged to that extent. Suetter, as Cornwall's surety upon the bond, was liable for such damages. If Suetter had not attempted to complete the contract, and Cummins had then been forced to complete it, the damage Cummins would have suffered would have been the difference in the contract price for doing the work provided for in

the Cornwall contract and what it actually cost him at market prices to complete the work. Cornwall would have been liable to Cummins for such damage as well as the amount of any overpayment made to laborers and for blacksmith bills pursuant to the Cummins-Cornwall contract. Suetter, as Cornwall's surety, would have been liable for the same up to the amount of $4,000.

It appears from the testimony that Suetter and Cornwall each signed the contract of assignment of the subcontract to Suetter; that by the terms of this contract Suetter was to take over the contract, release Cornwall, finish the work, and pay all bills and expenses incurred by Cornwall in the prosecution of the work up to about September 6, 1919, the time of the execution of the contract of assignment, and in consideration of that, Suetter was to receive what might be due Cornwall for the work he had performed. While the liability of Suetter upon the assignment would be in part the same as his responsibility as surety upon the bond, such liability as assignee would not be limited to the sum of $4,000 as provided in the bond. Such additional obligation assumed by Suetter as assignee was practically in the nature of a supplemental or additional agreement. The undertaking assumed by Suetter by virtue of the assignment was not inconsistent with his obligation as surety. Therefore the defendants could not properly be required to elect as requested by plaintiff, but were entitled to claim under both the bond and the assignment contract. There was no error in the ruling of the court.

2. Suetter asserts that he was led to believe that E. E. Cummins was S. E. Cummins, the father of the contractor. If Suetter had executed a bond as surety

for Cummins this might have been material. George Cornwall was the man for whom Suetter was sponsor. The bond was given to E. E. Cummins, and if he complied with his part of the engagement, as the testimony tends to show he did, it does not matter whether Suetter understood his name was E. E. Cummins or S. E. Cummins.

The question of the nonliability of Suetter as claimed is asserted or raised by the demurrer to defendants' answer, by the motion for a directed verdict in favor of plaintiff, and by an instruction to the jury requested by plaintiff to the effect that Suetter was not liable as surety upon the bond which was refused.

3. Objection is made by plaintiff that the Cornwall bond does not undertake to repay E. E. Cummins for any overpayments to Cornwall; that it is not an indemnity bond.

The contract and bond plainly provide that Cornwall would perform the work of construction within a certain time, and that if he failed to do so the obligation should remain in full force and effect: *Ausplund* v. *Aetna Indemnity Co.*, 47 Or. 10 (81 Pac. 574, 82 Pac. 12). According to the testimony Suetter well understood the nature of his obligation as surety, and he is bound by the instrument. The jury so found. It is unnecessary to discuss the conflicting testimony. That matter is settled by the verdict. Any payments made by Cummins for labor and blacksmithing, pursuant to the Cornwall contract, were legitimate expenses in the construction of the highway for which Cornwall and his surety were responsible. The claim that Cornwall should receive the benefit of all of the contract price of the work in excess of the cost, if there were such an excess, without being liable for

any excess of cost over the contract price, is not
tenable. We do not so read the plain letter of the
contract and bond.

4. When Cornwall failed to carry out his contract,
and abandoned the work about September 6, 1919, Cummins notified Suetter of the fact, and Suetter said
that he would have to take over the contract and complete the work. Thereupon Suetter obtained an assignment of the contract from Cornwall, and assumed
the indebtedness incurred by Cornwall in thus far
prosecuting the work.

Where a contractor assigns the contract to one of
his sureties with the consent of the obligee, the assignee assumes the character and responsibilities of the
principal: 32 Cyc. 38; 5 C. J., p. 874, § 44; *Ausplund*
v. *Aetna Indemnity Co.,* 47 Or. 10 (81 Pac. 574, 82
Pac. 12); *Gray* v. *McDonald,* 19 Wis. 213, 229. Such
surety, upon the default of the principal and with the
consent of the creditor obligee, may complete the contract, and in such case he will be subrogated to all the
rights of the principal as well as subjected to the
liabilities of the principal under the contract: 32 Cyc.
233; *Derby* v. *United States Fidelity & Guaranty Co.,*
87 Or. 34 (169 Pac. 500); *American Bond Co.* v. *Regents, University of Idaho,* 11 Idaho, 163 (81 Pac. 604);
*Rohde* v. *Biggs,* 108 Mich. 446 (66 N. W. 331); *First
Nat. Bank* v. *School Dist.,* 77 Neb. 570 (110 N. W.
349). It was therefore appropriate for Suetter to
take an assignment of the contract.

In *Ausplund* v. *Aetna Indemnity Co.,* 47 Or. 10 (81
Pac. 577), Mr. Justice MOORE said:

"If such private surety, however, becomes subrogated to the rights of his principal in the undertaking, to which he is a party, because of the latter's
failure to keep his agreement, he ought to be sub-

jected to all the liabilities assumed by his principal, regardless of the original contractual relation. In other words, a corporation becoming a surety may, like a private surety, by permitting its principal to make such default as he pleases, insist upon its strict legal right, and in an action to enforce its liability legally interpose any defense that a private surety may invoke under the same circumstances: But when a surety, either corporate or individual, in pursuance of the terms of an undertaking, 'assumes' the performance of the principal's contract, such surety, by being subrogated to the rights of the principal thereunder, must necessarily become subject to all his liabilities.''

5. At the time of the assignment the matter was complicated by the following arrangement. Cornwall had obtained a contract from the county of Yamhill to grade the gateways approaching to the highway, and keep them even with the grade of the highway as constructed. The work for the county amounted to $225. This work was not included in the Cummins-Cornwall contract. It had been done at the same time as the work of construction of the highway and by the same men and teams, and it was impossible to segregate the labor on the county work from that upon the highway. Cornwall refused to make the assignment unless he was paid for the county work. Suetter assented to this, and directed Cummins to pay Cornwall for the county work, which he paid at that time. Suetter now claims that a portion of the work charged to Cornwall and his surety was not included in the Cornwall-Cummins contract. This matter of extra work which was done for the benefit of Cornwall, and which Suetter was then in a position to obtain the benefit of by requiring the $225 to be paid to him, having been adjusted and settled by an agreement between the parties and paid for

according to the direction of Suetter, is as we view it no longer an element in this case. The consent of Suetter, the surety, healed any departure from the strict letter of the contract in this respect.

6, 7. It is claimed by plaintiff that Cummins did not perform his contract in the matter of payments to Cornwall, and on this account Cornwall was unable to continue the work. Objection was also made by plaintiff to the testimony of E. E. Cummins as a witness for defendants, for the reason that in testifying in order to refresh his memory, he referred to an itemized statement or schedule, prepared by him and furnished to plaintiff, of the several amounts paid for Cornwall during the time he was at work under the contract, of the amounts paid for Suetter while he was carrying on the work after he took charge thereof pursuant to the assignment, and of the items of expenditure made by Cummins toward the completion of the work after Suetter abandoned the work. The statement was prepared from the time-book, check-book, and bills and memoranda of labor, materials and expenses such as are usually kept in the performance of such work.

Mr. Cummins testified, in part, to the purport that, while Cornwall was at work he was there every few days and kept a memorandum of how many men were working every day. Cornwall gave him "the time every two weeks from his time-book," and he "checked it up." During the first part of the work Cummins and Cornwall would compare the amount of labor, and Cummins would give Cornwall a check for the amount. Later Cummins issued checks direct to the laborers and kept an account of the payments for labor and materials. Over the objection and exception of counsel for plaintiff, Cummins was permitted

to refresh his memory from the itemized statement, and to give the total amounts so paid out as follows:

Paid for Cornwall for labor and board
    of men and blacksmith bills and ma-
    terials up to September 6, 1919...... $5,821.75
Paid for Suetter from the time he took
    contract from Cornwall until he quit
    work for the same purposes........ $1,201.95
Expended toward the completion of
    the contract work to January 29,
    1920 ............................. $5,248.92

The statement furnished to plaintiff contains the names of various persons to whom the several amounts were paid and the amount paid to each. Cummins testified plainly that the various amounts were paid for the construction of the highway embraced in the Cummins-Cornwall contract. The proof does not depend upon the itemized account or schedule as primary evidence, but upon the sworn testimony of the witness. Our attention is not directed to any evidence of double payments, or any prejudice to the rights of the surety by reason of the manner in which Cummins conducted the business, and we find none. Some of the payments for labor and materials for the construction while Cornwall was on the job were paid by Cummins after Cornwall assigned the contract to Suetter. It does not appear that Suetter was in any way injured by reason of this. The testimony indicates, and the jury was warranted in finding, that all of the payments made by Cummins on account of Cornwall were applied for labor, blacksmith bills, and materials for the construction of the highway, in accordance with the terms of the subcontract and bond.

It was proper for the witness to refresh his memory from a memorandum or summary prepared under

his direction and supervision: *Bartels* v. *McCullough,* 201 Pac. 733, decided November 15, 1921. In view of the many items of account in the case and the manner in which memoranda or records of the transactions pertaining to the highway improvement were as usual kept, it was necessary and proper for the defendants to introduce in evidence, for reference by the jury, a summary of the items of expenditure, a duplicate of which was furnished plaintiff by defendants prior to the trial. It was the only possible way in which the figures could be given to the jury, so that the jury would understand the same. For a precedent in the use of schedules and summaries of details pertaining to construction work of the nature involved in the present case, see the opinion and record in the case of *Sweeney* v. *Jackson County,* 93 Or. 96 (178 Pac. 365, 182 Pac. 380). We do not recall that such procedure was challenged by counsel in that case.

8, 9. Suetter complains because Cummins did not pay Cornwall the 85 per cent of the monthly estimates of the work made by the district engineer. It is disclosed by the evidence that on August 16, 1919, such an estimate was made, and it appears therefrom that in addition to the amounts already paid by Cummins for labor as per the contract, 85 per cent of the estimate of work done by Cornwall would include a balance of $170. It was necessary to forward such estimate to the state highway engineer at Salem for approval. Before the estimate was approved and returned about September 1st, Cummins had advanced to Cornwall in payment for labor, as required by the subcontract, money in excess of the amount then due. Therefore Cummins was not in default in this respect, and Suetter has no cause for complaint in this regard.

Suetter also contends that Cummins overpaid Cornwall in violation of the rights of the surety. The testimony purported that the overpayments made by Cummins were for labor and blacksmithing, which by the plain letter of the contract Cummins was required to make as an advancement to Cornwall to enable him to carry on the contract work. There was no violation of the contract or bond in this respect.

The facts in this case, owing to the provisions of Cornwall's contract, differ from those in the case of *Dobbins* v. *Higgins*, 78 Ill. 440, and in similar cases cited by plaintiff. In the Illinois case the obligee withheld money with which to pay certain labor claims and claims for material, instead of paying the contractor as required by the contract bond. In the present case the testimony tended to show, and the jury evidently found, that Cummins performed his part of the contract. In short, the testimony tended to sustain the allegations of the answer and to support the verdict.

10. Plaintiff assigns error in the court permitting E. E. Cummins to testify over plaintiff's objection relative to his damages sustained by reason of the delay of Cornwall and Suetter to carry out the contract and complete the work within the time specified. It is in evidence that the rainy season in that locality commenced soon after Suetter abandoned the work, and on account of the work not being then completed additional expense was caused Cummins in obtaining and hauling gravel for a certain fill covered by the Cornwall contract. It is common knowledge that it is more difficult to transport such material after the fall rains begin in that county, and this was evidently one of the reasons for the stipulation in the contract that Cornwall should perform the work on or before

a specified time. We think such damages are such as would naturally arise from a breach of the contract. The circumstances were fairly within the contemplation of the parties at the time of the execution of the contract and bond. The objection is not well taken.

The damages recoverable for a breach of contract are such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as a probable result of a breach of it: *Blagen* v. *Thompson,* 23 Or. 239 (31 Pac. 647, 18 L. R. A. 315; 8 R. C. L. 455).

In addition to general damages, the injured party is entitled to recover special damages which arise from circumstances peculiar to the particular case, where those circumstances were communicated to or known by the other party at the time the contract was made: *Blagen* v. *Thompson, supra.*

11. Plaintiff objected and excepted to the testimony of defendant E. E. Cummins relative to the contents of the alleged assignment between Cornwall and Suetter. It appears from the testimony that the memorandum of the assignment was not available, and the contents thereof were testified to by E. E. Cummins, and the attorney who represented Suetter and the attorney who represented Cornwall at the time the same was written. There was no error in admitting such testimony.

12. Counsel for plaintiff contend that the measure of the defendants' damage was not what E. E. Cummins may have paid toward the completion of the contract work, but was the reasonable cost and expense of procuring the labor to be done, and purchasing the necessary materials in order to make the work conform with the provisions of the contract;

citing *Seaside* v: *Randals,* 92 Or. 650 (180 Pac. 319). Counsel for defendants say that this rule is correct. This raises a question of fact. E. E. Cummins, after detailing the several payments made by him for work and material upon the highway contracted to Cornwall, testified as follows:

"Q. * * I will ask you how you paid, whether you paid the contract and ordinary price of labor, or whether you paid more than the workmen asked, how did you pay in that respect?

"A. I paid the rate—the prevailing price for wages. What I could secure men for.

"Q. In reference to materials, state whether you paid the market price or a price in excess to the market price.

"A. I paid the market price.

"Q. On all these materials.

"A. All these materials."

The jury had a right to believe the testimony of Cummins. The testimony in the case does not warrant the objection made by plaintiff.

13. Plaintiff assigns that the court erred in refusing to instruct the jury as requested by plaintiff to the effect that the liability of the surety is only commensurate with the liability of the principal.

In the case at bar it appears Suetter, the surety by virtue of a contract executed by him with Cornwall in consideration of the benefits of the subcontract accruing to Cornwall at the date of the assignment, stepped into Cornwall's shoes, so to speak, and for all practical purposes became the principal in the contract, with the assent of Cummins. Suetter placed a foreman in charge of the work on the highway and proceeded to carry out the contract. He is not in a position to assert that the contract of assignment with Cornwall has been annulled. The requested

instruction, under the facts in this case, would only tend to confuse the jury, and was properly refused.

14. Suetter furnished horses which performed labor on the work, and by a requested instruction claims that he is entitled to be paid for such labor. As heretofore pointed out, Suetter being responsible as surety upon the bond and as the assignee of Cornwall for the completion of the work as per the contract, it would be idle to allow him to be paid as a laborer, and then require Cummins to collect the same amount back from Suetter as such surety and assignee. The instruction was properly refused.

Exceptions were saved to instructions of the court to the jury, as to the measure of damages. The court fully explained the issues and charged the jury in plain language in accordance with the law as above stated, and which in substance is contained in plaintiff's brief. The case was fairly submitted to the jury. We have carefully examined all of the instructions to the jury and find no error therein. It appears that Mr. Suetter, unfortunately for him, signed Cornwall's bond. There is some conflict in the testimony in regard to the conditions of the assignment. This controversy was thoroughly presented to the jury by the court's charge, and determined by the verdict.

We find no error in the record. The judgment of the trial court is affirmed.    AFFIRMED.

McBRIDE, HARRIS and BROWN, JJ., concur.