## SOUTHERN SURETY CO. v. SEALY INDEPENDENT SCHOOL DIST. et al. (No. 7222.)

Court of Civil Appeals of Texas. Austin. Oct. 17, 1928.

Rehearing Denied Nov. 21, 1928.

C. G. Krueger and C. D. Duncan, both of Bellville, for defendants in error.

McCLENDON, C. J. Suit by Southern Surety Company (1) against Sealy independent school district for balance of $12,267.45 on a school building contract; (2) against the trustees of the district for wrongfully diverting $6,200 from the district building fund; and (3) against Sealy National Bank for wrongfully appropriating such diverted fund. The school district reconvened for $35,000, alleging breach of the building contract by the surety company and Wertz, the original contractor. Trial to court without a jury, and judgment denying the surety company any recovery and awarding a found net balance in favor of the district on its cross-action against the surety company. The latter has appealed.

The record is unusually and quite unnecessarily large, and the briefs, especially that of appellant, are of like character. The questions involved, while in some respects presenting difficulty, are in the main ruled by adjudicated cases. An outline statement of the uncontroverted facts will, we believe, facilitate a clear understanding of the questions the appeal presents.

On July 10, 1922, the school district contracted with Wertz for the construction according to plans and specifications made by Finn, the architect, of a two-story brick school building. The contract price was $40,900, subject to additions and deductions, and payments were to be made monthly if requested to the amount of 85 per cent. of labor and material furnished, upon certificates of the architect. The contract authorized the withholding of certificates by the architect for the protection of unpaid laborers, materialmen, and the surety. At the same time the Southern Surety Company executed a bond in the penal sum of $20,000, assuring the faithful performance of the contract and the payment by Wertz of all labor and material bills. This bond was expressly made for the benefit, not only of the school district, but for such laborers and materialmen. In the application for this bond, Wertz assigned to the surety company all sums to become due under the contract. Wertz began and prosecuted the erection of the building; and three estimates were certified by the architect and paid by the district, aggregating $20,478.36. On November 14, 1922, Wertz presented an estimate of some $8,500, for which the architect declined to issue a certificate, because unpaid bills of materialmen had been filed with him, and he demanded that Wertz satisfy these claims as a condition precedent to issuing the certificate. On November 17, 1922, Wertz abandoned the work, and on November 22, 1922, the architect addressed a letter to him at his last-known address, notifying him that the surety would be called

McGregor & Burr and King, Battaile & Sonfield, all of Houston, for plaintiff in error.

on to complete the building. Copy of this notice was sent the surety company, and formal demand made on it to complete the building. On November 24, 1922, the surety company acknowledged this notice and in writing agreed to complete the building, assuming all unpaid labor and material bills that were a proper charge against it as surety, and making formal claim for all sums due or to become due under the contract. At that time extras had been allowed by the architect to the amount of $75. The surety company employed a contractor on a cost plus basis; the work proceeded to completion; and on March 8, 1923, the surety company tendered the building to the architect for the district as completed. In the meantime $8,500 had been paid to the surety company on architect's estimate, and on January 26, 1923, the architect had issued a certificate in favor of Wertz for $6,200, upon which a warrant was drawn by the district and delivered to the bank. The latter, which was also the treasurer of the district, transferred the amount from the district building fund to the personal account of Wertz, and applied it on notes which Wertz owed it for advances made to satisfy his pay rolls. On March 9, 1923, the architect in writing accepted the building on behalf of the trustees of the district, "as being substantially and satisfactorily completed according to plans and specifications agreed upon by the board of trustees and C. Frost Wertz, as contractor." The instrument, however, stated that, while the improvements were accepted as substantially completed according to plans and specifications, "the same cannot be accepted as being completed, according to the terms and provisions of the contract * * * until satisfactory evidence is made to us that all claims for labor and material against the improvements, incurred by Wertz, or by you as his successor and surety, have been paid in full." This evidence was later furnished and the final payment demanded. Shortly after March 9, 1923, the district went into possession and continued using the building. A little later it was discovered that the walls leaked very badly, and further payment was declined.

Appellant's brief presents 58 assignments of error, briefed under 32 propositions. The court's findings of fact are questioned in every conceivable manner. Several propositions relate to the question of substantial performance. These become immaterial in the view we take of the case, and will therefore not be discussed. The contention embodied in the remaining propositions will be considered under the following eight general subjects:

(1) The necessity of making Wertz a party, and incidentally the imputation of his fraud to the surety company.

(2) The finality and binding effect of the architect's acceptance, both contractually and by way of estoppel.

(3) The sufficiency of the pleading to avoid the acceptance.

(4) The effect of limitation on the school district's cross-action.

(5) The sufficiency of the evidence both as a matter of law and as to its preponderating effect to establish (1) fraud of the surety company or contractor that would avoid the acceptance; and (2) breach of the contract in the several respects found by the court.

(6) The measure of damages applied by the court to the cross-action.

(7) Sufficiency of the evidence to sustain the $6,200 payment to Wertz, and its appropriation by the bank.

(8) Amount of the unpaid balance due under the contract, including allowed extras.

The judgment is assailed as fundamentally erroneous, because Wertz was not made a party to the cross-action against the surety company, the pleadings not alleging facts which would authorize suit against the surety without joining the principal. R. S. 1925, art. 1987. This contention is overruled because it appears affirmatively from the pleadings of both parties, as well as from the undisputed evidence that after Wertz defaulted the surety company assumed all his liabilities then incurred, and obligated itself to complete the contract, claiming all sums thereunder, then or thereafter to become due. In so far as the relations between the surety company and the district are concerned, the former ceased to be a surety for Wertz, but became the original contractor and liable primarily to the district. The cross-action was therefore maintainable in its entirety against the surety company as an original and primary obligee. The following decisions in principle support this holding: American Bonding Co. v. Regents of University of Idaho, 11 Idaho, 163, 81 P. 604; Watterson v. Canal Co., 25 Cal. App. 247, 143 P. 90; State v. Cornwall, 102 Or. 220, 201 P. 1072. Particularly do we direct attention to the paragraph at the bottom of page 610 and top of page 611, and the last sentence of first paragraph on page 612, of case in 81 P. This holding disposes of the further contention by appellant that fraud of Wertz in concealing from the architect or his inspector defects in the wall construction, or in the proportions of material used in the mortar, could not be imputed to the surety company on the issue of finality of the architect's acceptance.

We sustain the propositions and assignments of appellant attacking the trial court's finding to the effect that the acceptance of the architect was not final, and therefore could be impeached only for fraud, accident, or mistake. The only ground upon which these findings could rest would be the language of the architect's acceptance above quoted, to the effect that, while the building and improvements were accepted as substantially and satisfactorily completed according to plans and specifications, they could not be

accepted as being completed "according to the terms and provisions of the contract," until satisfactory evidence of the payment of all claims for labor and material was furnished. This in no sense made acceptance of the work performed conditional. It merely required the surety company as a condition precedent to receiving final payment for the building to show that there were no unpaid claims which would be a proper charge against the balance due under the contract. In so far as this acceptance related to the work done under the contract (that is, the erection of the building), it was unequivocal and not open to construction, and, under the well-recognized rule in this state, thereafter constituted conclusive evidence of full compliance with the contract, in the absence of proof of fraud, accident, or mistake. Boettler v. Tendick, 73 Tex. 488, 11 S. W. 497, 5 L. R. A. 270; Kilgore v. North West, etc., Soc., 89 Tex. 465, 35 S. W. 145; Carnegie, etc., Ass'n v. Harris, 43 Tex. Civ. App. 165, 97 S. W. 520.

■ The fact, however, that the surety company had made settlement with its subcontractor and materialmen upon faith of the finality of the acceptance would not estop the district from impeaching the acceptance for fraudulent concealment, either by Wertz or the surety company, of defective work and material, not then discovered by the district or the architect.

■■ Appellant contends that there was no pleading upon which the issue of fraud could be properly raised, and therefore all evidence upon that issue, as well as all evidence of breach of the contract, was improperly admitted. This contention is based upon the assertion that, although the school district alleged that there was fraudulent concealment of defective work and material in each of the respects complained of, there was no formal pleading admitting the execution of the architect's acceptance and its binding effect, and therefore no predicate for a plea in avoidance thereof. Under our system of pleading, it is not necessary for a defendant in setting up a plea in confession and avoidance, to formally confess the plaintiff's cause of action or any part thereof. All that is essential is to set up the facts constituting the matter in avoidance.

■ The contention that the cross-action was barred by the two-year statute of limitation is predicated upon the assertion that it was essential to set aside the architect's acceptance on the ground of fraud, before any right of action would exist for breach of the contract, that such fraud itself constituted the cause of action, or at any rate a necessary and essential part thereof, and that, since fraud was not asserted in any pleading of the district until more than two years after the defects were actually or should have been discovered, the cross-action was therefore barred by limitation. We

overrule this contention upon two grounds. The cause of action asserted in the cross-action was unquestionably founded upon breach of a written contract. The architect's acceptance, conceding its binding effect in the absence of fraud, was but evidentiary. Its sole purpose was to afford evidence that the contract had been fully performed. It created no independent rights or liabilities of the parties. If it had not been mentioned by either party in the pleadings, the cross-action would have been maintainable just as it was, requiring the same evidence to support it. We are aware of the decisions in those states in which law and equity are administered in different courts to the effect that, before such final certificate could be brought in question in a court of law, it would be necessary to set it aside in an independent equity suit. We do not think this fact affects the question of limitation as applied to a suit in this state upon a written contract, where under our practice all matters in relation thereto, both legal and equitable, may be litigated in the same action. However, even if it be conceded that an allegation of fraud sufficient to set aside the acceptance was an essential element of the cross-action, still the cause of action as originally pleaded remained the same. An amendment which merely added an essential element to that cause of action which had not theretofore been pleaded would not be the assertion of a new cause of action. The rule in this state is that a pleading setting up a cause of action, however defective it may be, even to the extent of being bad on general demurrer, is sufficient to toll the statute. Killebrew v. Stockdale, 51 Tex. 529; Henderson v. Beggs (Tex. Civ. App.) 207 S. W. 565. For other cases see citations under 16 Tex. S. W. Digest, p. 17505, Key No. 127 (2).

Upon the issue of the sufficiency of the evidence to support the trial court's findings of breach of contract in various particulars: The 468-page statement of facts is largely taken up with a mass of testimony, expert, opinion, and otherwise, upon this phase of the case. We do not believe a statement or analysis of this testimony would serve any substantially useful purpose. After a careful sifting of the testimony we find and hold (1) that the evidence is sufficient as a matter of law to support the following findings; and (2) that its preponderating effect is not such as, in the interests of justice, to require setting aside the judgment:

(1) That the mortar did not contain the contractual proportions of specified materials.

(2) That the bricks were not thoroughly wetted before being laid.

(3) That interstices in the walls were not thoroughly filled with mortar.

(4) That the brick were not laid with "shoved joints."

(5) That every second course of brick was not grouted with mortar.

(6) That these deviations from the specifications produced the leaky condition of the walls found by the trial court.

We also find the evidence sufficient, both as a matter of law and as to its preponderating effect, to support the finding of the trial court, in substance, that these changes in the specifications were not known to or discovered by, and were concealed from the architect and his representatives; that this was surreptitiously done, constituted fraud upon the architect, and but for this concealment and fraud he would not have issued the final certificate. There is direct, positive evidence of fraud in the proportions of materials used in the mortar mix; in effect that the foreman gave instructions to the mixer to follow the specifications when the inspector was present, and change the proportions when he was away. This evidence alone is probably sufficient to set aside the final certificate in toto. But, if not, then we hold fraudulent concealment with reference to the other deviations from the specifications reasonably inferable from evidence to the effect that the character and extent of the deviations were such that they would have been discovered by the inspector on his several visits while the wall was being built, had they not been purposely covered up and concealed from his observation. The witnesses who testified for the surety company upon this issue were not disinterested; and the above evidence, coupled with positive evidence of fraudulent concealment in the mortar mix, was sufficient to support the finding of fraudulent concealment in the other respects found.

■ The contract did not provide for superintendence of the work by the architect, but only for inspection at reasonable intervals. The case therefore does not fall within the rule applied in some of the cases cited by appellant, notably City Street Improvement Co. v. Marysville, 155 Cal. 419, 101 P. 308, 23 L. R. A. (N. S.) 317. Fraudulent concealment of material defects was sufficient to invalidate the final certificate.

■ The measure of damages applied by the trial court was the reasonable cost ($17,000) of suspending the roof, taking down the walls, cleaning the brick, and relaying them in fresh mortar in accordance with the plans and specifications. The court found, in this connection, that the defects permeated the whole structure, and that the remedy, cost of which he allowed, was that applied by him.

The sufficiency of the evidence to support these findings is questioned. There is evidence to support a finding that the walls could be waterproofed by applying certain solutions, but it was shown that this was only a temporary remedy, and would have to be repeated from time to time. The evidence was sufficient, we think, to support the finding, and the trial court did not err in the measure of damages applied.

■ We sustain appellant's assignments questioning the validity of the $6,200 warrant issued in favor of Wertz and appropriated by the bank. The trial court upheld this payment on two grounds: (1) Assignment of estimates by Wertz to the bank; and (2) assignment of their liens or claims by laborers to the bank.

Neither of these grounds is tenable under the holding in Hess & Skinner v. Turney, 110 Tex. 148, 216 S. W. 621.

At the time the bank obtained its assignment from Wertz he was not entitled to any certificate for labor or material furnished. True, as found by the trial court, he had furnished labor and material to the amount of $8,500. But certificate was properly withheld by the architect because of unsatisfied labor and material claims to the amount of $8,895.01, which claims were later paid by the surety company. The contract expressly provided:

"That before each payment, if required, the contractor shall give the architect good and sufficient evidence that the premises are free from all liens and claims chargeable to the said contractor."

This phase of the case is not briefed by appellees, and we therefore adopt the statement from appellant's brief to the effect that there was no evidence of any assignment of their claims by laborers to the bank. The facts were that each week Wertz's superintendent took to the bank a list of alleged employees with the amount due each, executed a note for the gross amount, and received from the bank the amount of the note. These transactions furnished no basis for a claim against the fund due or to become due on the contract, or against the surety company, under either the assignment or subrogation theory. Turney Case, above.

The amount earned under the contract was: Contract price $40,900; allowed extras $345.81—total $41,245.81. The total amount paid on estimates to Wertz and the surety company was $28,978.36. The unpaid balance was therefore $12,267.45. This deducted from $17,000 leaves $4,732.55, the net principal amount of judgment to which the school district is entitled.

The trial court's judgment is reformed so as to reduce the principal amount of recovery in favor of the school district against the surety company from $12,254 to $4,732.55. As so reformed, and, in all other respects, the trial court's judgment is affirmed.

Reformed and affirmed.