Argued February 21, affirmed in part; reversed and in part June 25, reconsideration denied August 14, petition for review allowed September 5, 1979

# COPELAND SAND AND GRAVEL INC.,
*Appellant,*

*v.*

# INSURANCE COMPANY OF NORTH AMERICA, et al,
*Respondents.*

(No. 75-414-L, CA 11238)

596 P2d 623

Argued and submitted February 21, 1979.

Benjamin E. Freudenberg, Grants Pass, argued the cause for appellant. With him on the briefs was Balderree, Killoran & Nelson, Grants Pass.

Hugh B. Collins, Medford, argued the cause for respondent. With him on the brief was Collins, Velure & Heysell, Medford.

Before Schwab, Chief Judge, and Tanzer, Richardson and Roberts, Judges.

ROBERTS, J.

## ROBERTS, J.

In September, 1973, the City of Rogue River contracted with R & W Construction Company (R & W) for the construction of a sewer system. Defendant Insurance Company of North America (INA) was surety on R & W's performance bond. In June, 1974, R & W ceased performance of its contract with the city and assigned its rights under the city contract to INA. Thereafter, the city made all payments under the contract directly to INA, and INA in turn made or authorized payments to suppliers and subcontractors. Upon being notified of R & W's difficulties with the construction project, INA engaged defendant Tobin, Crawford & Mikolavich, Inc. (TCM), a firm of local insurance adjusters, to assess the situation for INA and to perform various services, including transmittal of payments to subcontractors and suppliers.

In June, 1974, INA engaged a subcontractor, Tru-Mix, to "administer" the construction on INA's behalf. The contract between INA and Tru-Mix recites in part that:

> "As a result of certain differences between the City of Rogue River and R & W Construction Co., [INA] is undertaking to complete said contract on behalf of R & W Construction Co.
>
> "Tru-Mix is an experienced contractor and [INA] desires to retain the services of Tru-Mix to assist [INA] in in the completion of [R & W's] contract."

In August, 1974, the contract between INA and Tru-Mix was terminated by mutual consent, and one of the partners of R & W resumed or was engaged by INA to provide direct management of the project. The city continued to make payments directly to INA. INA continued to make or authorize payments to subcontractors and suppliers. These included payments to the two partners of R & W, although the partners were not formally included on the project payroll and no amounts were withheld from the payments to them.

Plaintiff alleges that it has not been paid by defendants for certain services, material and equipment which were provided by plaintiff during and after September, 1974, although plaintiff did receive payment from defendants for services and supplies provided before that time. Plaintiff contends that, in June, 1974, INA assumed R & W's role as contractor of the project and was responsible for all obligations incurred by the project after that time, notwithstanding the limits of INA's bond as surety. Plaintiff further contends that TCM, as INA's agent, gave plaintiff assurances of payment, which constituted an agreement by the two defendants to pay plaintiff or which estopped the defendants from denying their responsibility for payment.

The defendants argue that INA did not, as a matter of fact, assume the role of the project contractor; that its obligations to pay subcontractors and suppliers is limited by the amount of its bond—which was exhausted at the time the goods and services in question were provided; that there was substantial evidence to support the trial court's findings to the foregoing effect; and that TCM either did not give the purported assurances or that to do so would have exceeded the scope of TCM's agency for INA.[1] The trial court, sitting without a jury, found in favor of defendants. We affirm the judgment in favor of TCM and reverse the judgment in favor of INA.

The general rule is that the liability of a surety is limited to the amount of its bond. However, when the principal defaults or fails to perform, the surety may, where permitted by contract or with the acceptance of the other party to the principal contract, assume the role of its principal for purposes of performing the obligation which it has bonded. When the surety does so, it becomes responsible for performance of the principal contract and for all obligations incurred in connection with performance, notwithstanding the

---

[1] The trial court made no special findings.

limits of liability in the bond. *Ausplund v. Aetna Indemnity Co.,* 47 Or 10, 81 P 577, 82 P 12 (1905); *Suetter v. Cornwall et al.,* 102 Or 220, 201 P 1072 (1921); *Caron v. Andrew,* 133 Cal App 2d 402, 284 P2d 544 (DCA 3rd District, 1955).

■ In sum, the principal issue in this case is whether INA assumed R & W's role as contractor with the city after R & W failed to perform, and, if so, whether INA was responsible for payment for the goods and services provided by plaintiff and plaintiff's assignor. In support of its position that the answer to these questions is yes, plaintiff points to the evidence in the record that R & W assigned its rights under the construction contract to INA, that the city thereafter made its payments to INA throughout the remainder of the performance period, that INA contracted with Tru-Mix and engaged various other subcontractors and suppliers to complete the city contract, and that INA authorized payments to subcontractors and suppliers.

Defendants argue that whether INA assumed the principal's responsibilities under the construction contract is a question of fact which was decided adversely to plaintiff by the trial court, and that there was substantial evidence to support that finding. The difficulty with defendants' argument is that certain of the facts to which plaintiff adverts are *as a matter of law* rather than fact, inconsistent with INA's status as a surety and are consistent only with its assumption of the contractor's role under R & W's contract with the city. The *combination* of INA's acceptance of the assignment of rights from R & W, its acceptance of payments from the city under the principal contract, and its engaging and paying a subcontractor for continued performance of the original contractor's duties under that contract—all of which the evidence shows and INA does not dispute occurred— had the legal effect of making INA the contractor in place of R & W. *See Suetter v. Cornwall et al., supra.*

[835]

■ ■  The next question is whether INA remained the contractor after the Tru-Mix subcontract was terminated in August, 1974 and the R & W partner resumed participation in the project. The R & W partner's involvement after August 1974 was not shown to be different in substance from Tru-Mix's during the two months preceding, and INA made payments to the R & W partners out of the sums the city paid INA pursuant to the contract. The California court in *Caron v. Andrew, supra,* quoted with approval:

> "\* \* \* However, if the company, upon the default of the contractors, undertook to complete the work, a different case is then presented. In that event, the company, by such new undertaking, put itself in the place of the contractors *from the moment of the new undertaking,* and became liable for the costs of completing the building, without reference to the amount for which it had signed as surety. In other words, in that event, *from that moment on,* the company occupied the position of contractor and became liable \* \* \*." (Emphasis supplied.) 284 P2d at 549-50.

We do *not* hold that once a surety has assumed the role of the principal contractor that the original principal can *never* resume its role as such. We do hold that at least when, as here, there has been an assumption by the surety of the principal contractor's obligations, and there is no evidence that the other party to the principal contract has agreed for the original principal to re-assume those obligations or the current principal to be relieved of them, the latter remains responsible for the performance of its assumed obligations.

The defendants do not argue that plaintiff's goods and services were not provided to the construction project.[2] The dissent states:

---

[2] The defendants' brief states:

"All materials and services for use on the job were ordered by the contractor [referring to R & W]."

The trial judge "assumed" that R & W made all job orders for the period in question. R & W was of course a subcontractor or agent of INA's during that period.

"* * * There is no evidence that INA made a new contract with the city or a contract with R & W by the terms of which either plaintiff was a third-party beneficiary. * * *" 40 Or App at 839.

That statement loses sight of the fact that, having assumed the role of principal contractor, INA became liable for payment for all goods and services it, or any of its agents or subcontractors, ordered, accepted or used in connection with the construction project. The Supreme Court stated in *State v. Johnson Contract Co. et al.,* 120 Or 633, 253 P 520 (1927):

"It is obvious that unless made so by statute, an original contractor on public work, in the absence of an express authorization, is not responsible for things purchased by his subcontractor *unless the things purchased are in some way referable to the contract between them * * *.*" (Emphasis supplied.) 120 Or at 635.

INA had no option as to whether suppliers of goods and services for the project would be third-party beneficiaries of its contracts *as principal;.* in that capacity, INA's liability to suppliers is direct.

The parties stipulated at trial to the value of the goods and services furnished by plaintiff for which it has not been compensated, together with statutory interest. We reverse the part of the judgment in favor of INA and remand the matter to the trial court with instructions to enter judgment for plaintiff and against INA in accordance with that stipulation.

With respect to plaintiff's action against TCM, we affirm. Although there was evidence from which a trier of fact could have found that TCM contracted directly for some of the goods and services supplied by plaintiff, there was also substantial evidence to support the contrary finding which the trial court apparently did make. As demonstrated by its disposition of plaintiff's action against INA, the trial court did not apply correct legal principles in this case. However, our review of the record satisfies us that the trial

court's misunderstanding did not cause it to misperceive the relevant factual question regarding TCM — whether TCM, acting as INA's agent, directly contracted with plaintiff and plaintiff's assignor for the goods and services supplied and thereby became either individually or jointly liable with INA for payment. The record contains sufficient evidence to support the finding in TCM's favor.

Affirmed in part; reversed and remanded with instructions in part.

**SCHWAB, C. J.,** dissenting.

The plaintiff's principal contention is that INA, through its agent, promised payment to plaintiff if plaintiff would continue performing its subcontract with R & W, the prime contractor. Since the appeal is from a judgment in an action at law, tried without a jury, the question is whether there is substantial evidence to support the trial court's finding that there was no such independent promise. The opinion holds, I think correctly, that there was substantial evidence to support the trial court's finding on this question.

However, the opinion then holds that as a matter of law INA assumed the responsibility of the principal under the construction contract, and therefore, notwithstanding the trial court's general finding in favor of INA, INA is liable to pay sums in excess of the payment and performance bond's stated maximum. Three of the four reasons given in support of that conclusion do not, in my opinion, establish that INA undertook to perform as the general contractor. Those stated reasons are that R & W assigned its right to receive progress payments from the city to INA, that the city thereafter made payments to INA, and that INA authorized payments to subcontractors and suppliers.[1] As a practical matter, any surety under a performance bond who realizes that his principal is

---

[1] The payments were in the form of checks payable to R & W and INA.

starting to have trouble, will have progress payments made to it in order that it may monitor the disbursement of funds because it is apparent at that point that some of the surety's money will have to be used also. These facts, however, do not make the surety a general contractor.

The fourth reason, namely that INA contracted with Tru-Mix to complete the job, is the only one of the four factors which might be said as a matter of law to require a conclusion that INA intended to take over the project to the exclusion of R & W. The Tru-Mix contract indicates that that probably is what INA intended at that time. Whether or not this was intended is immaterial. There is no evidence that INA made a new contract with the city or a contract with R & W by the terms of which either plaintiff was a third-party beneficiary. Further, as pointed out above, the trial judge found against plaintiff on its contention that it changed its position to its detriment or otherwise in reliance upon promises by INA.

We have thus reached a result increasing INA's contractual liability absent any good reason.

For the foregoing reasons I respectfully dissent.